EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ramón Jiménez Marrero y Nitza Hernández Santos<br><br>Demandantes Recurridos<br><br>v.<br><br>General Instruments, Inc. y/o NextLevel, Corp.<br><br>Demandados Peticionarios | Certiorari<br><br>2007 TSPR 13<br><br>170 DPR \_\_\_\_ |

Número del Caso: CC-2004-1031

Fecha: 19 de enero de 2007

Tribunal de Apelaciones:

        Región Judicial de Bayamón

Juez Ponente:

        Lcdo. Nydia Cotto Vives

Abogados de la Parte Peticionaria:

        Lcdo. Pedro Jaime Torres Díaz
        Lcdo. Miguel Palsu Sabater
        Lcdo. Alfredo M. Hopgood Jovet

Abogado de la Parte Recurrida:

        Lcdo. Luis R. Mellado-González

Asociación de Industriales de Puerto Rico

        Lcdo. Manuel Reyes Alfonso

Materia: Reclamación de Salario

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramón Jiménez Marrero y Nitza
Hernández Santos

    Demandantes Recurridos

        v.                    CC-2004-1031

General Instruments, Inc. y/o
NextLevel, Corp.

    Demandados Peticionarios

Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez

San Juan, Puerto Rico, a 19 de enero de 2007.

El presente caso plantea novedosas interrogantes dentro del campo de la legislación protectora del trabajo, en particular, dentro de la denominada legislación de horas y salarios, a saber: ¿procede el pago a tiempo triple de las horas trabajadas durante un séptimo día de trabajo consecutivo, cuando éstas coinciden con horas extras trabajadas en exceso de cuarenta (40) semanales? ¿Tiene el patrono que considerar en el cómputo de horas extras la retribución de un diferencial de turno nocturno? ¿Aplica la doctrina federal conocida como "de minimis" a una reclamación de periodos de tomar alimentos, instada por un empleado

que acordó por escrito con su patrono reducir dichos periodos a media (½) hora? ¿Qué efecto tuvo la reforma laboral de 1995 sobre los decretos mandatorios de la Junta de Salario Mínimo y los beneficios contenidos en los mismos? ¿Tiene alguna consecuencia legal de naturaleza civil un fraccionamiento de vacaciones no ajustado a Derecho? Antes de responder las interrogantes planteadas, veamos los hechos que originan el presente recurso.

I

El 28 de julio de 1998, el señor Ramón Jiménez Marrero y la señora Nitza Hernández Santos presentaron una Demanda en el Tribunal de Primera Instancia contra General Instruments Puerto Rico, Inc./NextLevel Systems Puerto Rico, Inc., en adelante General Instruments. Le reclamaron, en lo aquí pertinente, lo siguiente: (1) compensación a razón del triple del salario convenido para las horas regulares, por las horas trabajadas durante séptimos días consecutivos de labor, cuando coincidían con horas extras en exceso de cuarenta (40) semanales; (2) la penalidad legal por periodos o fracciones de periodos de tomar alimentos (en lo sucesivo P.T.A.) trabajados; (3) diferencia en compensación por horas extras diarias proveniente de la práctica del patrono de no considerar en su cómputo el diferencial de turno nocturno de $0.25 por hora dispuesto en el Manual del Empleado; y (4) que se les pagara, nuevamente, las vacaciones que cobraron y

disfrutaron en descanso durante su tiempo de servicio, por haber sido ilegalmente fraccionadas por el patrono.

El señor Jiménez Marrero trabajó para General Instruments desde diciembre de 1994 hasta diciembre de 1997, inicialmente como ensamblador y luego como operador de máquina. Por su parte, la señora Hernández Santos trabajó como operadora de máquina y oficinista, desde julio de 1985 hasta diciembre de 1997.

Luego de varios incidentes procesales, se celebró el juicio en su fondo durante los días 30 de abril y 1 de mayo de 2002. El 7 de agosto de 2002, el Tribunal de Primera Instancia dictó sentencia, declarando "Con Lugar" la demanda.[1]

En relación con la reclamación de compensación a razón del triple del tipo de salario convenido para las horas regulares, por las horas trabajadas durante séptimos días consecutivos de labor, cuando coincidían con horas extras en exceso de cuarenta (40) semanales, el tribunal concluyó que el señor Jiménez Marrero no trabajó bajo tal escenario. Determinó que nunca laboró durante séptimos días consecutivos de trabajo, por lo que no procedía su demanda en cuanto a ese extremo. No obstante, concluyó que la señora Hernández Santos sí laboró durante séptimos días de trabajo consecutivo

---

[1] Apéndice del recurso de *certiorari*, págs. 691-736.

en cuatro (4) ocasiones[2], coincidiendo tales periodos de trabajo con jornadas extraordinarias en exceso de cuarenta (40) horas semanales. Resolvió que las horas trabajadas por la señora Hernández Santos bajo tal marco fáctico tenían que ser compensadas por General Instruments de la forma siguiente: una vez al salario regular por hora convenido; una vez adicional por ser horas extras semanales y otra vez más por constituir trabajo realizado durante el séptimo día consecutivo de labor.

Por otro lado, en términos de la reclamación de compensación por concepto de penalidad por periodos o fracciones de periodos de tomar alimentos (P.T.A.) trabajados, el tribunal concluyó que, durante su tiempo de servicio con General Instruments, el señor Jiménez Marrero sólo disfrutó de media (½) hora diaria de P.T.A. Determinó que el patrono no desfiló prueba que demostrara que el señor Jiménez Marrero solicitó, autorizó u acordó reducir a media (½) hora su P.T.A. Dictaminó que General Instruments venía obligada a pagarle por cada media (½) hora de P.T.A. dejada de disfrutar (quinientas cuatro (504) medias (½) horas en total) un tipo de salario igual al doble del tipo de salario convenido para las horas regulares, descontando la

---

[2] Específicamente, los días (1) 23 de octubre de 1995, (2) 15 de julio de 1996, (3) 23 de septiembre de 1996 y (4) 23 de diciembre de 1996.

compensación a tipo sencillo que de las mismas General Instruments había satisfecho.[3]

Distinto al caso del señor Jiménez Marrero, el tribunal encontró que el 8 de julio de 1985, la señora Hernández Santos firmó un formulario, tipo carta, en el cual solicitó a General Instruments que le gestionara ante el Departamento del Trabajo un permiso para reducir su P.T.A. a media (½) hora.[4] Determinó que, en efecto, el 23 de julio de 1985, el Departamento del Trabajo expidió a General Instruments el referido permiso.[5] Por ello, resolvió que la señora Hernández Santos no tenía derecho a compensación a razón del doble del tipo de salario convenido para las horas regulares por las medias (½) horas del P.T.A. no disfrutado como resultado de la reducción.

Ahora bien, luego examinar las tarjetas de asistencia de la señora Hernández Santos, el tribunal concluyó que en ciento noventa (190) ocasiones, durante los años 1991-1997, ésta trabajó toda o parte de la media (½) hora de P.T.A. que le quedaba disponible, luego de practicada la concernida reducción. Determinó que, en todas esas ocasiones, la señora

---

[3] En su sentencia, el tribunal toma en cuenta los cambios en el salario regular por hora que tuvo el señor Jiménez Marrero durante su tiempo de servicio con General Instruments.

[4] Véase copia del documento, Apéndice del recurso de *certiorari*, pág. 229. Cabe señalar que, a esa fecha, el nombre de la demandada era M/A Comm Telecomunications Puerto Rico, Inc.

[5] Véase copia del permiso expedido por el Departamento del Trabajo, Apéndice del recurso de *certiorari*, pág. 230.

Hernández Santos trabajó por espacio de más de cinco (5), seis (6) o siete (7) horas consecutivas, sin hacer una pausa en sus labores para alimentarse.[6] Concluyó que ello ocurrió, tanto durante jornadas regulares como durante jornadas extraordinarias, en las cuales la señora Hernández Santos era acreedora a un segundo (2do) P.T.A., luego de haber trabajado por cinco (5) horas consecutivas, a partir de su regreso a labores, después de concluido su primer P.T.A.[7] Dictaminó que en cada una de las ciento noventa (190) ocasiones en que la señora Hernández Santos trabajó durante toda o parte de su ya reducida media (½) hora de P.T.A., General Instruments venía obligada a pagarle un tipo de salario igual al doble o igual al triple del tipo de salario convenido para las horas regulares, por los periodos o fracciones de periodos de tomar alimentos dejados de disfrutar, siendo el carácter doble o triple de la compensación, dependiente, en cada caso, de si se trataba de un P.T.A. en jornada regular o de uno en jornada extraordinaria. Ello, claro está, descontando la compensación a tipo sencillo o doble que, según haya sido el caso, General Instruments satisfizo por los periodos o

---

[6] Véase el detalle de las ciento noventa (190) ocasiones en que ello sucedió, por orden cronológico, con especificación de día, mes y año, en la tabla que a esos fines consignó en su sentencia el Tribunal de Primera Instancia, Apéndice del recurso de *certiorari*, págs. 710-713.

[7] La señora Hernández Santos nunca solicitó, autorizó ni acordó con General Instruments obviar su segundo P.T.A., en caso de no trabajarse más de 2 horas extras, luego de concluida la jornada regular.

fracciones de periodos de tomar alimentos trabajados en jornada regular o extraordinaria.

De otra parte, en cuanto a la reclamación de diferencia en compensación por horas extras diarias proveniente de la práctica del patrono de no considerar en su cómputo el diferencial de turno nocturno de $0.25 por hora dispuesto en el Manual del Empleado, el tribunal concluyó que el señor Jiménez Marrero no era acreedor a la misma. Determinó que no trabajó horas extras en horarios en los cuales General Instruments se había comprometido a pagar el concernido diferencial de turno. En cambio, concluyó que las tarjetas de asistencia de la señora Hernández Santos demostraban que trabajó en cuarenta y cuatro (44) ocasiones, durante los años 1991-1997, horas extras diarias, en horarios en los que General Instruments se había comprometido a pagar el diferencial de turno en cuestión.[8] En consecuencia, resolvió que General Instruments venía obligada, en cada una de dichas instancias, a hacer lo que nunca hizo: considerar el referido diferencial de turno nocturno en el cómputo de horas extras diarias. Obviamente, implicando ello el deber de General Instruments de hacer el recómputo correspondiente de la compensación por horas extras y pagarle a la señora Hernández

---

[8] Véase el detalle de las cuarenta y cuatro (44) ocasiones en que ello sucedió, por orden cronológico, con especificación de día, mes y año, en la tabla que a esos fines consignó en su sentencia el Tribunal de Primera Instancia, Apéndice del recurso de *certiorari*, págs. 708-709.

Santos la diferencia resultante entre la cantidad correcta de compensación por horas extras y la pagada.

Finalmente, en relación con el reclamo a los efectos de que General Instruments pagara, de nuevo, las vacaciones ilegalmente fraccionadas, el Tribunal de Primera Instancia concluyó que, en el caso de la señora Hernández Santos, no hubo tal fraccionamiento. Por tanto, resolvió que no procedía su demanda en cuanto a dicho extremo. Sin embargo, concluyó que General Instruments le fraccionó ilegalmente las vacaciones al señor Jiménez Marrero, en dos (2) periodos de cinco (5) días laborables consecutivos cada uno, tanto en el año 1995 como en el 1996. Razonó que la ilegalidad del fraccionamiento estribó en que el empleado nunca lo solicitó, autorizó u acordó con el patrono. **Resolvió que la actuación de General Instruments violó las disposiciones del decreto mandatorio que le era aplicable.** Expresó que, **aunque el decreto mandatorio** no disponía un remedio específico para tal violación, procedía tomar por analogía el remedio que sí contemplaba **el decreto** para el caso en que el patrono no concede vacaciones después de acumularse por dos (2) años; esto es, **pagar dos (2) veces (doble)** los días acumulados en exceso de dichos dos (2) años. Así las cosas, dispuso que General Instruments, **por analogía**, venía obligada a pagarle al señor Jiménez Marrero, nuevamente, los días de vacaciones que le concedió en disfrute y paga, pero de forma fraccionada, tanto en el año 1995 como en el 1996.

Inconforme, General Instruments recurrió al Tribunal de Apelaciones.

El 30 de agosto de 2004, el Tribunal de Apelaciones confirmó la sentencia apelada en todos sus extremos.

Denegada una moción de reconsideración, General Instruments acudió ante nos mediante recurso de *certiorari*. Señaló que el Tribunal de Apelaciones cometió los errores siguientes:

1. Erró manifiestamente el Honorable TA al resolver que el trabajo realizado durante el séptimo día consecutivo de trabajo debe compensarse al triple del salario regular por hora, cuando éstas coincidían con trabajo en exceso de 40 horas.

2. Erró manifiestamente el Honorable TA al imponer una penalidad por el alegado fraccionamiento de vacaciones, cuando no existe dicha penalidad dispuesta en ley o decreto mandatorio aplicable.

3. Erró manifiestamente el Honorable TA al resolver que a la demandante Nitza Hernández debía pagársele un diferencial de turno por las horas extras trabajadas, cuando la propia demandante declaró que no reclamaba dicha partida, y cuándo era improcedente dicho pago toda vez que ella siempre trabajó en un primer turno, para el cual no había diferencial aplicable.

4. Erró manifiestamente el Honorable TA al concluir que procedía el pago de una penalidad por cada instancia en que Hernández comenzó a disfrutar su periodo de tomar alimentos después de comenzada la sexta hora consecutiva de trabajo, cuando la tardanza era de solo unos pocos minutos, y cuando no se probó que General Instruments no le pagaba la penalidad aplicable.

5. Erró manifiestamente el honorable [sic] Tribunal de Primera Instancia al declarar con lugar ciertas partes de la demanda, cuando los demandante [sic] no cumplieron con el peso de probar sus reclamaciones.

El 31 de enero de 2005, la Asociación de Industriales de Puerto Rico, en adelante la Asociación de Industriales, presentó ante nos una moción solicitando autorización para presentar un memorando en calidad de *Amicus Curiae* y en apoyo a la expedición del recurso de *certiorari* presentado por su miembro afiliado General Instruments. Nos alertó que la sentencia del Tribunal de Apelaciones forma parte de un conjunto de decisiones que confligen con otras tantas emitidas por distintas sedes del Tribunal de Primera Instancia y paneles del Tribunal de Apelaciones en controversias idénticas, relacionadas con la compensación por horas trabajadas durante séptimos días consecutivos de labor, que coinciden con horas extras en exceso de cuarenta (40) semanales, y relacionadas con el fraccionamiento de vacaciones y sus consecuencias. Nos invitó a pautar sobre ambos extremos para terminar con lo que describió como una caótica confusión jurídica entre sus empresas afiliadas. Decidimos expedir el recurso de *certiorari* y declarar "Con Lugar" la solicitud de la Asociación de Industriales.

Habiendo estudiado cuidadosamente el voluminoso expediente del recurso, y contando con el beneficio de la comparecencia de las partes y de la Asociación de Industriales estamos en posición de resolver.[9]

_____

[9] En su comparecencia, la Asociación de Industriales se limitó a discutir los señalamientos de error 1 y 2 levantados por General Instruments. Éstos son el relativo a la compensación de las horas trabajadas durante séptimos días

(Continúa . . .)

II

Para la mejor y más cabal comprensión de esta Opinión, atenderemos los errores señalados por General Instruments según la relación existente entre ellos.

**A. Compensación por las horas trabajadas durante séptimos días consecutivos de labor, cuando coinciden con horas extras en exceso de cuarenta (40) semanales.**

Tanto la peticionaria como los recurridos han hecho un esfuerzo en sus respectivos alegatos para convencernos, la primera, de que la compensación por horas trabajadas durante séptimos días consecutivos de labor que coinciden con horas extras semanales es a tiempo doble, y los segundos, de que la interacción de la Ley 289 y la 379 produce, bajo dicho escenario, una norma de compensación a tiempo triple. El Tribunal de Apelaciones resolvió que la compensación que procede en tal escenario es tiempo triple. Veamos.

Mediante la aprobación de la Ley Núm. 289 de 9 de abril de 1946[10], conocida como la Ley del Día de Descanso o Ley del Séptimo Día, en adelante Ley 289, la Asamblea Legislativa

_____

que coinciden con horas extras semanales y el relacionado a las consecuencias de un fraccionamiento de vacaciones no ajustado a Derecho.

[10] 29 L.P.R.A. secs. 295-299. Esta ley fue subsiguientemente enmendada por la Ley Núm. 130 de 27 de abril de 1950, para excluir de la definición del término "empleado" a los profesionales, ejecutivos y administradores, y por la Ley Núm. 121 de 2 de junio de 1976, para incluir como patronos

(Continúa . . .)

consagró, con carácter urgente[11], el derecho de todo empleado, cuyo patrono no estuviese sujeto a las disposiciones de la antigua Ley de Cierre[12], a un (1) día de descanso por cada seis (6) de trabajo, entendiéndose por día de descanso un periodo de veinticuatro (24) horas consecutivas.[13] Como medida para desalentar que los patronos requirieran o permitieran a sus empleados trabajar durante el día de descanso o, lo que es igual, durante séptimos días consecutivos de labor, el legislador le impuso la obligación de pagar las horas rendidas por sus empleados durante dichos días a razón del doble del tipo de salario convenido para las horas regulares.[14] Conviene destacar que, en ese momento, no denominó tales horas como "horas extras".

Apenas dos (2) años más tarde, la Asamblea Legislativa volvió a aprobar legislación para limitar la jornada de trabajo en Puerto Rico. En esa ocasión, promulgó la Ley Núm. 379 de 15 de mayo de 1948, conocida como la Ley de la Jornada

---

sujetos a sus disposiciones a los que operan sin fines de lucro.

[11] Su sección 7 dispone: Esta Ley, por ser de carácter urgente y necesaria, empezará a regir inmediatamente después de su aprobación. 29 L.P.R.A. sec. 299.

[12] Hoy Ley para Regular las Operaciones de Establecimientos Comerciales, 29 L.P.R.A. sec. 301 *et seq.*

[13] 29 L.P.R.A. sec. 295.

[14] Íd., sec. 298.

de Trabajo o Ley de Horas y Días de Trabajo, en adelante Ley
379.[15]

Como dato singular, el artículo 22 de la Ley 379
expresamente dejó subsistente la Ley 289 y los decretos
mandatorios promulgados por la hoy extinta Junta de Salario
Mínimo de Puerto Rico, al amparo de la entonces Ley de
Salario Mínimo de Puerto Rico, Ley Núm. 8 de 5 de abril de
1941.[16] Dichos decretos mandatorios, hoy conocidos como "los
originales", algunos de los cuales fueron aprobados con
anterioridad a las Leyes 289 y 379, disponían, entre otras
condiciones de trabajo en beneficio de los trabajadores,
horas máximas de labor diaria y/o semanal.[17]

Tal como hizo en la Ley 289, el legislador describió la
Ley 379 como una necesaria y urgente.[18] En su Exposición de
Motivos la resaltó como "una de las grandes reivindicaciones
obreras" y acto seguido consignó lo siguiente:

> Se trata de una medida de efectiva protección de
> la salud, la seguridad y la vida del trabajador.
> **Las jornadas excesivas de labor producen fatiga,
> aumentan la frecuencia de los accidentes del
> trabajo y quebrantan el vigor del organismo,
> exponiéndose a dolencias y enfermedades.** Además,
> privan al trabajador del tiempo necesario para el

---

[15] 29 L.P.R.A. secs. 271-288.

[16] 1948 Leyes de Puerto Rico 1255, 1271.

[17] A modo de ilustración, véase la sección B del Decreto
Mandatorio Núm. 5 (1944), aplicable a la Industria de Cerveza
y Gaseosas y la sección B(2)(a) y (b) del Decreto Mandatorio
Núm. 3 (1943), aplicable a la Industria del Azúcar.

[18] 1948 Leyes de Puerto Rico 1255, 1271.

solaz y cultivo de su espíritu y sus relaciones sociales y ciudadanas (énfasis suplido).[19]

Tales eran las jornadas y condiciones de trabajo que sufrían los obreros en aquellos días del año 1948, que en el último párrafo de la referida Exposición de Motivos, la Legislatura consignó lo siguiente:

> Se declara por la presente que la política de esta Ley es, mediante el ejercicio de la facultad de la Asamblea Legislativa de Puerto Rico para decretar leyes para la protección de la vida, la salud y la seguridad de empleados y obreros, **corregir y tan rápidamente como sea posible eliminar las <u>condiciones de explotación</u> del <u>trabajador</u> <u>a base de jornadas excesivas</u>**, aumentar los empleos sustancialmente y proveer una mejor compensación al empleado en aquellos casos en que el patrono prolonga la jornada (énfasis nuestro).[20]

A la fecha de los hechos del caso de autos, y en la actualidad, la Ley 379 establece en su artículo 2 que ocho (8) horas de labor constituyen la jornada diaria de trabajo en Puerto Rico, y cuarenta (40), la jornada de trabajo semanal.[21]  Por su parte, su artículo 3 dispone que son horas regulares de trabajo ocho (8) durante cualquier día de trabajo y cuarenta (40) durante cualquier semana de trabajo.[22]

---

[19] Íd., 1255.

[20] Íd., 1257.

[21] 29 L.P.R.A. sec. 271.  Originalmente, y hasta el año 1974, la ley disponía que la jornada de trabajo semanal era de cuarenta y ocho (48) horas.

[22] 29 L.P.R.A. sec. 272.  Originalmente, y hasta el año 1974, la ley disponía que eran horas regulares de trabajo cuarenta y ocho (48) durante cualquier semana.

Por otro lado, el artículo 4 de la Ley 379 lista qué son horas extras de trabajo, y citamos:

(a) Las horas que un empleado trabaja para su patrono en exceso de ocho (8) horas durante cualquier período de veinticuatro (24) horas consecutivas;

(b) Las horas que un empleado trabaja para su patrono en exceso de cuarenta (40) durante cualquier semana, a menos que las horas trabajadas diariamente en exceso de ocho sean pagadas a tipo doble;

(c) Las horas que un empleado trabaja para su patrono durante los días u horas en que el establecimiento en que presta servicio deba permanecer cerrado al público por disposición legal; Disponiéndose, sin embargo, que no serán horas extra las horas que el empleado trabaja para su patrono durante los días u horas en que el establecimiento deba permanecer cerrado al público cuando el patrono ha obtenido del Secretario del Trabajo el permiso requerido por la Ley Núm. 80 de 5 de mayo de 1931, según ha sido o fuera subsiguientemente enmendada, y la totalidad de horas trabajadas por el empleado durante ese día no exceda de ocho (8) horas ni la totalidad de horas trabajadas durante la semana exceda de cuarenta (40) horas.

(d) **Las horas que un empleado trabaja para su patrono durante el día de descanso que se haya fijado** o se fijase **por ley en el caso de industrias y negocios que no están sujetos al cierre de su establecimiento**; y las horas que un empleado trabaja para su patrono durante el día domingo en aquellos establecimientos comerciales que mantengan sus operaciones ese día y estén sujetos a las disposiciones de la ley para regular las operaciones de establecimientos comerciales; Disponiéndose que las horas trabajadas durante el día domingo en los establecimientos comerciales cubiertos por dicha ley se pagarán a un tipo de salario igual al doble del tipo convenido para las horas regulares.

(e) Las horas que el empleado trabaja para su patrono en exceso del máximo de horas de labor al día que la Junta de Salario Mínimo haya fijado o

fijase para la ocupación, negocio o industria en cuestión;

(f) Las horas que el empleado trabaja para su patrono en exceso del máximo de horas de labor al día fijado en un convenio colectivo de trabajo (énfasis suplido).[23]

Inmediatamente después de listar las distintas clases de horas extras existentes, el artículo 5 de la ley dispone cómo el patrono tiene que pagarlas. Sin hacer distinción alguna entre las distintas clases de horas extras, el referido artículo indica lo siguiente:

> **Todo patrono que emplee o permita que trabaje un empleado durante horas extras** vendrá obligado a pagarle por cada hora extra un tipo de salario igual al **doble** del tipo convenido para las horas regulares; Disponiéndose, sin embargo, que todo patrono de una industria en Puerto Rico cubierta por las disposiciones de Ley de Normas Razonables de Trabajo ("FAIR LABOR STANDARS ACT") aprobada por el Congreso de Estados Unidos de América en 25 de junio de 1938, según ha sido o fuere subsiguientemente enmendada, sólo vendrá obligado a pagar por cada hora extra de trabajo en exceso de la jornada de ocho (8) horas un tipo de salario a razón de, **por lo menos, tiempo y medio** del tipo de salario convenido para las horas regulares, salvo el caso en que por decreto de la Junta de Salario Mínimo o convenio colectivo de trabajo se haya fijado otra norma de trabajo o de compensación, o de ambas (énfasis nuestro).[24]

Al menos en dos (2) ocasiones tuvimos ante nuestra consideración controversias salariales en las que se reclamaba compensación por horas trabajadas durante séptimos días consecutivos de labor, que resultaban ser también horas

---

[23] 29 L.P.R.A. sec. 273.

[24] Íd., sec. 274. Renumerado como artículo 6 por la Ley Núm. 83 de 20 de julio de 1995.

extras en exceso de cuarenta (40) semanales. Laborde v. Eastern Sugar[25] fue un caso en el que la reclamación salarial cubría el período de tiempo comprendido entre el 10 de febrero de 1942 y el 30 de junio de 1952. Allí pautamos cómo debían pagarse las horas de trabajo reclamadas, tomando en cuenta los cambios en las jornadas de labor y normas de compensación introducidas a lo largo del periodo cubierto por la reclamación por la Ley Núm. 49 de 7 de agosto de 1935[26], el Decreto Mandatorio Núm. 3, *supra* –de 1943–, la Ley 289 –de 1946– y la Ley 379 –de 1948. A pesar de que las reglas de compensación allí pautadas incluían el escenario de interacción entre las Leyes 289 y 379, aquí en controversia, en ningún momento resolvimos ni vislumbramos que procedía, como resultado del mismo, una compensación a razón del triple del salario convenido para horas regulares. Más aún, en dicho caso, también entró en interacción con las Leyes 289 y 379 las disposiciones de **horas máximas de labor semanal** del Decreto Mandatorio Núm. 3, *supra*, y, sin embargo, expresamos:

> [e]l efecto de la Ley Núm. 379 de 1948 sobre el Decreto Mandatorio Núm. 3, en cuanto a la industria azucarera se refiere, fue crear un nuevo tipo de compensación por hora durante el tiempo de zafra, **conservando la compensación a tipo doble por cualquier hora trabajada durante el día de descanso** (énfasis nuestro).[27]

---

[25] 81 D.P.R. 478 (1959).

[26] 1935 Leyes de Puerto Rico 539.

[27] Íd., pág. 490.

Asimismo, en Ponce Ramos v. Fajardo Sugar Co.[28], estuvo en controversia en qué momento exacto comienza el período de veinticuatro (24) horas consecutivas de descanso a que se refieren las Leyes 289 y 379; es decir, en qué momento exacto termina el sexto día consecutivo de trabajo que menciona la Ley 289. En aquel entonces, todavía la jornada máxima de trabajo semanal contemplada por la Ley 379 era de cuarenta y ocho (48) horas.[29] Sin embargo, luego de resolver la controversia de derecho que planteaba el caso, ordenamos al patrono pagar a tiempo **doble** las ocho (8) horas trabajadas por los obreros reclamantes durante su día de descanso, las que a su vez, como cuestión de hecho, constituían horas extras diarias –como consecuencia de un cambio de turno- y horas extras semanales –en exceso de cuarenta y ocho (48).[30] Como vemos, en dicho caso tampoco dispusimos la compensación a razón del triple del salario convenido para horas regulares que ante nos reclaman los recurridos, quienes, a la sazón, están ubicados en un marco fáctico similar al de Ponce Ramos.

Si bien es cierto que en ninguno de los dos (2) casos discutidos dispusimos la compensación a tiempo triple aquí reclamada, también lo es que no se nos planteó, como controversia concreta, que la interacción de la Ley 289 con la Ley 379 creaba un estado de derecho de compensación a

---

[28] 85 D.P.R. 599 (1962).

[29] Véase notas al calce 21-22.

[30] Véase, Ponce Ramos v. Fajardo Sugar Co., *supra*, pág. 609.

razón del triple del tipo de salario convenido para horas regulares, al trabajarse durante el día de descanso, en momentos en que el empleado se hallaba laborando, a su vez, en tiempo extraordinario en exceso de cuarenta (40) horas semanales. Además, nótese que éstos casos fueron resueltos con anterioridad a Pamblanco v. Union Carbide[31], Acevedo v. P.R. Sun Oil Co.[32] y Colón v. Syntex P.R., Inc.[33] Asimismo, fueron resueltos previo a la aprobación del Reglamento para Regular el Disfrute del Periodo de Tomar Alimentos, Compensación y la Expedición de Permisos para su Reducción, Núm. 4334 del Departamento del Trabajo y Recursos Humanos, de 24 de septiembre de 1990. Como sabemos, del análisis integrado de la Ley 379, los casos mencionados y el reglamento aludido se desprende que, cuando el P.T.A. coincide con tiempo extraordinario, si se trabaja durante el mismo, o parte del mismo, además de la paga requerida por ley por ser hora extra, el patrono viene obligado a pagar una penalidad equivalente a una vez adicional la hora o fracción de la hora de P.T.A. no disfrutada. También conocemos que lo mismo aplica en el caso en que se ha reducido el P.T.A. y se trabaja durante todo o parte del P.T.A. reducido, cuando coincide con tiempo extraordinario. Dicho de otra forma, el P.T.A. o fracción del P.T.A que no se disfruta en jornada

---

[31] 90 D.P.R. 712 (1964).

[32] 14 D.P.R. 752 (1998).

extraordinaria, tiene que pagarse a razón del triple o, en algunos casos, a razón de dos veces y media el tipo de salario convenido para las horas regulares.[34]

Es evidente que el Tribunal de Apelaciones aplicó por analogía la norma de compensación a tiempo triple, aplicable al trabajo realizado durante el P.T.A. en jornada extraordinaria, a la situación en que se realiza trabajo durante el séptimo día consecutivo de labor, cuando dicho trabajo resulta ser también en exceso de la jornada ordinaria de cuarenta (40) horas semanales. Lo demuestra su conclusión a los efectos de que la compensación en controversia estaba gobernada por el razonamiento siguiente, y citamos:

> (1) Una vez, porque se trabajó.
> (2) Una vez, por ser horas trabajadas en exceso de 40 horas semanales.
> (3) Una vez, por ser trabajadas en día de descanso.
> Es decir, la compensación es triple.[35]

No obstante, el foro intermedio apelativo erró al así resolver. Veamos.

Cuando la Asamblea Legislativa aprobó en 1946 la Ley

---

[33] 2004 T.S.P.R. 104, 2004 J.T.S. 123, 162 D.P.R. __ (2004).

[34] Por el efecto del "Disponiéndose" del artículo 6 de la Ley 379, 29 L.P.R.A. sec. 274. Véase, además, la Opinión 90-6 de 24 de septiembre de 1990 del Secretario del Trabajo. Se aclara que lo aseverado no procede cuando el empleado ha acordado por escrito con su patrono obviar el segundo P.T.A., en caso de que no se trabajen más de dos (2) horas extras, luego de concluir la jornada ordinaria de ocho (8) horas, de conformidad con el renumerado artículo 15 de dicha ley, 29 L.P.R.A. sec. 283.

[35] Apéndice del recurso de *certiorari*, pág. 3046.

289[36], conocía la existencia de decretos mandatorios que disponían jornadas máximas de labor de cuarenta y ocho (48) o cuarenta (40) horas semanales y que obligaban al patrono a compensar a razón del **doble o**, al menos, a razón de **tiempo y medio** el tipo de salario convenido para las horas regulares, las horas trabajadas por sus empleados en exceso de tales jornadas máximas semanales. Aún así, promulgó la Ley 289 y estableció en su sección 4 el derecho de los empleados a recibir paga a un "tipo de salario igual al **doble** del tipo convenido para horas regulares" por las horas trabajadas durante el día de descanso semanal (énfasis suplido). Si la intención del legislador hubiese sido que dichas horas se pagaran a tiempo triple, cuando coincidieran con jornada extraordinaria en exceso de cuarenta y ocho (48), en exceso de cuarenta (40) o en exceso de cualquier otro máximo de horas de labor semanal dispuesto en un decreto mandatorio, fácil le hubiese sido hacer la salvedad correspondiente en la propia sección 4 de la Ley 289. No obstante, no hizo reserva de clase alguna a la compensación a tipo doble fijada en la referida sección 4 de la ley.

Por otro lado, al aprobar la Ley 379, el legislador fijó, con rango de ley, las jornadas máximas de labor diaria y semanal en ocho (8) y cuarenta y ocho (48)[37] horas, respectivamente. Denominó tales horas como regulares y

---

[36] No existe historial legislativo de la Ley 289.

[37] Refiérase nuevamente a las notas al calce 21-22.

definió qué son horas extras de trabajo mediante la creación
de un listado taxativo en el artículo 4 de la ley.  Según
señalamos antes, en dicho listado consignó, entre otras
categorías de horas extras, las horas trabajadas en exceso de
ocho (8) en un periodo de veinticuatro (24) consecutivas, las
horas trabajadas en exceso de cuarenta y ocho (48)[38] a la
semana y las horas trabajadas durante el día de descanso
fijado por la Ley 289 (séptimo día de trabajo consecutivo).
Como explicáramos anteriormente, después de listar las
distintas categorías de horas extras existentes, el
legislador dispuso cómo el patrono tenía que pagarlas.
Estableció al respecto dos (2) normas de compensación en el
artículo 5[39] de la ley, a saber:

(1)   a razón del **doble** del tipo de salario convenido
      para las horas regulares;

(2)   patronos sujetos a las disposiciones de la Ley de
      Normas Razonables de Trabajo de 1938, sólo vendrían
      obligados a pagar por cada hora extra de trabajo en
      exceso de la jornada legal de ocho (8) horas, por
      lo menos, **tiempo y medio** del tipo de salario
      convenido para las horas regulares. [40]

---

[38] Íd.

[39] Véase la nota al calce 24.

[40] Salvo el caso en que por decreto mandatorio de la hoy
extinta Junta de Salario Mínimo de Puerto Rico o por virtud
de un convenio colectivo de trabajo se haya fijado otra norma
de compensación.

Entonces, aquí procede hacer la misma observación. Si la Asamblea Legislativa hubiese querido establecer una norma de compensación distinta a las anteriores para las horas extras trabajadas en exceso de cuarenta (40) semanales, que coinciden con el día de descanso del empleado, hubiese hecho la salvedad correspondiente al redactar el referido artículo 5 de la Ley 379. Fácil le hubiese sido hacerlo, mas no lo hizo.

Profundizando aún más en nuestro estudio, hemos examinado el escaso historial legislativo disponible de la Ley 379. En él, nada hemos encontrado que nos mueva a pensar que el legislador contemplara una norma de pago distinta para las horas extras semanales, cuando éstas coinciden con horas trabajadas durante un séptimo día consecutivo de labor. Al parecer, el asunto ni siquiera fue objeto de discusión durante el proceso de aprobación de la pieza legislativa.

Somos del criterio que cuando se legisló la Ley 379, la Asamblea Legislativa sencillamente elevó a rango de hora extra las horas trabajadas durante el día de descanso o séptimo día de trabajo consecutivo fijado en la Ley 289, en igualdad de condiciones con los restantes tipos de horas extras listadas en su artículo 4. Lo mismo hizo con las horas trabajadas durante los días u horas en que los establecimientos comerciales debían permanecer cerrados al público a tenor con la antigua Ley de Cierre.[41] En nuestra

---

[41] Véase nota al calce 12.

apreciación, el legislador simplemente aprovechó la aprobación de la Ley 379 para designar y reunir en un mismo artículo de la ley —artículo 4— las distintas instancias en que se producen horas extras de trabajo. No estableció diferencia jerárquica ni supremacía alguna entre las distintas clases de horas extras listadas en el referido artículo, ni estableció una norma de compensación distinta para horas extras semanales que coincidan con el día semanal de descanso del trabajador.[42]

Según se desprende de la antes discutida Exposición de Motivos de la Ley 379, al aprobarse la ley, la Legislatura estaba consciente de que la Ley 289 no había sido una medida legislativa suficiente para proteger la salud, la seguridad y la vida del trabajador, aún fatigado y expuesto a accidentes y enfermedades como resultado de jornadas excesivas de labor. Con su aprobación, entonces, quiso finalmente corregir y eliminar lo que describió como condiciones de explotación del trabajador basadas en jornadas excesivas. No albergamos dudas de que esas condiciones de explotación basadas en jornadas excesivas incluían el escenario aquí en

---

[42] Conviene aclarar que la Ley 289 de ninguna manera perdió vigencia o valía con la aprobación de la Ley 379. La primera continúa cubriendo escenarios de trabajo fuera del alcance de la Ley 379. A modo de ejemplo, la Ley 289 dispone compensación a tipo doble por todas las horas trabajadas durante un séptimo día consecutivo de labor, independientemente de la cantidad de horas que el empleado haya trabajado en la semana. Ello implica que bajo la Ley 289 el obrero tiene derecho a paga a tipo doble, aún cuando haya trabajado menos de cuarenta (40) horas en la semana.

controversia: trabajo rendido durante un séptimo día consecutivo de labor que resulta ser también en exceso de cuarenta (40) horas semanales.[43]  Para ese escenario de trabajo, el legislador pudo haber dispuesto una norma de compensación a un tipo de salario igual al triple[44] del tipo de salario convenido para las horas regulares.  No lo hizo, aún estando plenamente consciente de que por virtud de la Ley 289, las horas trabajadas durante el séptimo día ya se compensaban a tiempo doble.  No nos corresponde hacerlo a nosotros vía *fiat judicial*.  Es conveniente añadir aquí que la oficina del Procurador del Trabajo del Departamento del Trabajo y Recursos Humanos, la cual sienta la política pública del referido Departamento en cuanto a la interpretación de la legislación protectora del trabajo que la agencia administra, contestó la consulta número 13606, llegando a la misma conclusión que nosotros.[45]

---

[43] Originalmente eran cuarenta y ocho (48) horas semanales. Refiérase nuevamente a las notas al calce 21-22.

[44] O igual a dos veces y media.  Véase la primera oración de la nota al calce 34.

[45] La respuesta a la consulta número 13606 fue la siguiente:

    21 de octubre de 1991


    Re: Consulta Número 13603

    Un empleado que trabaja siete (7) días consecutivos de ocho (8) horas cada uno, debe recibir la siguiente paga: 1/

    1. Las primeras cuarenta (40) horas, o sea, los primeros cinco (5) días de ocho (8) horas de
                                              (Continúa . . .)

Por último, no puede utilizarse por analogía, en el escenario de trabajo en controversia, la norma de compensación a tiempo triple[46], aplicable al trabajo realizado durante el P.T.A. en jornada extraordinaria. Sobre este particular, basta recordar que, según resolvimos en Salgado v. Tribunal Superior, el P.T.A. no constituye una

---

trabajo, debe recibir una paga equivalente a cuarenta (40) horas sencillas de labor, por constituir la jornada semanal regular de trabajo. (Artículo 3, Ley Núm. 379 de 15 de mayo de 1948, según enmendada).
2. El sexto día de trabajo debe pagarse a tiempo doble por constituir tiempo extra en exceso de la jornada regular de cuarenta (40) horas a la semana. (Artículo 4 (b), Ley Núm. 379, supra).
3. **El séptimo día debe pagarse a tiempo doble por constituir el día mandatorio de descanso dispuesto por la Ley Núm. 289 de 9 de abril de 1946, según enmendada. (Sección 4 de la ley).**

**En total, el empleado debe recibir una paga equivalente a setentidós (72) horas de trabajo.2/** Naturalmente, a pesar de que no existe una prohibición en ley para que un empleado trabaje durante siete (7) días consecutivos, como cuestión de política pública no se favorece una jornada tan prolongada de labor.

Cordialmente,

Julio Cruz Rodríguez
Procurador del Trabajo
(Énfasis nuestro)

1/Asumiendo la aplicación de la Ley Núm. 289 de 9 de abril de 1946, según enmendada, como se hace en la consulta.

2/Estamos asumiendo que cada día el empleado disfrutó de su hora para tomar alimentos.

[46] O a razón de dos veces y media, en algunos casos. Refiérase a la nota al calce 44.

hora extra.[47]  El concepto del P.T.A. es uno distinto y totalmente independiente al de hora extra.[48]

En definitiva, erraron tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones al resolver que las horas trabajadas durante un séptimo día consecutivo de labor, que resultan ser también en exceso de cuarenta (40) horas semanales, deben compensarse a un tipo de salario igual al triple del tipo de salario convenido para las horas regulares.  Es un hecho incontrovertido que General Instruments le pagó a la señora Hernández Santos, en las cuatro (4) ocasiones en que ello ocurrió, a razón del doble del tipo de salario convenido para las horas regulares.  Como hemos visto, tal actuación se ajustó al Derecho aplicable.

**B. Consideración de un diferencial de turno en el cómputo de la compensación por horas extras.**

El Manual del Empleado que General Instruments distribuyó a sus trabajadores, incluida la señora Hernández Santos, disponía que los empleados no exentos recibirían **el pago** de un **"Diferencial por Turno Nocturno"** de $0.25 o $0.40 **por hora**.  De $0.25, si el empleado rendía labores en horarios de 3:30 PM en adelante.  De $0.40, si rendía labores en horarios de 10:00 PM en adelante.[49]

---

[47] 92 D.P.R. 363, 372 (1965).

[48] Concreto Mixto v. Tribunal Superior, 92 D.P.R. 808 (1965).

[49] Apéndice del recurso de *certiorari*, pág. 245.

El horario regular de trabajo de la señora Hernández Santos era de 7:00 AM - 3:30 PM, con media (½) hora de P.T.A. De otro lado, General Instruments mantenía turnos de trabajo durante las 24 horas del día.

El Tribunal de Primera Instancia determinó que los registros de asistencia de la señora Hernández Santos demostraban que durante los años 1991-1997 ésta trabajó en cuarenta y cuatro (44) ocasiones horas extras en exceso de ocho (8) diarias.[50] Concluyó que en cada una de dichas ocasiones, una vez completó sus ocho (8) horas regulares de trabajo a las 3:30 PM, la señora Hernández Santos continuó trabajando en jornada extraordinaria, en horario correspondiente al segundo turno de la empresa. Dicha conclusión está ampliamente apoyada por las tarjetas de asistencia de la señora Hernández Santos.[51] Por otro la do, es un hecho incontrovertido que General Instruments no consideró el diferencial de turno nocturno de $0.25 por hora al calcular la compensación correspondiente a las horas extras diarias rendidas por la señora Hernández Santos después de las 3:30 PM.

---

[50] Véase el detalle de las cuarenta y cuatro (44) ocasiones en que ello sucedió, por orden cronológico, con especificación de día, mes y año, en la tabla que a esos fines consignó en su sentencia el Tribunal de Primera Instancia, Apéndice del recurso de *certiorari*, págs. 708-709.

[51] Véase, a modo de ilustración, Apéndice del recurso de *certiorari*, págs. 819-1121.

El Tribunal de Apelaciones, confirmando al foro primario, resolvió que General Instruments venía obligada a considerar el referido diferencial de turno en el cómputo de la compensación por horas extras diarias de la señora Hernández Santos.    Sin embargo, General Instruments arguye ante nosotros que el foro intermedio apelativo erró porque el diferencial de turno en cuestión no podía ser incluido como parte del "tipo de salario convenido para las horas regulares" de la señora Hernández Santos.[52]

Según señalamos antes, el renumerado artículo 6 de la Ley 379 dispone que "[t]odo patrono que emplee o permita que un empleado trabaje durante horas extras vendrá obligado a pagarle por cada hora extra un tipo de **salario** igual al doble del tipo de **salario** convenido para las horas regulares" (énfasis nuestro).[53]

Para resolver la presente controversia, basta con acudir a la definición del término **"salario"** que provee la propia Ley 379 en su artículo 20, y citamos:

...

---

[52] Alegato de la parte peticionaria, Apéndice del recurso de *certiorari*, pág. 25. Enfatizamos que en su comparecencia como amigo de la corte, la Asociación de Industriales no se expresó sobre este señalamiento de error. Véase nota al calce 9.

[53] Omitimos la parte del "Disponiéndose" del referido artículo por no ser pertinente al presente caso. Ello, y como indicamos antes, en vista de que General Instruments pagaba todas las horas extras a razón del doble del tipo de salario convenido para las horas regulares.

*(3) **Salario*** – Incluye sueldo, jornal, paga **y cualquier otra forma de retribución pecuniaria** (énfasis suplido).[54]

Una simple lectura de la definición demuestra que el legislador quiso que el término **"salario"** usado por él en el renumerado artículo 6 de la Ley 379 fuera interpretado de la forma más inclusiva, amplia y liberal posible. Si el legislador hubiese querido una definición restrictiva del término, a los fines de la norma de compensación por horas extras dispuesta en el referido artículo 6 de la ley, le hubiese dado una definición distinta.[55]

En consecuencia, resolvemos que el pago de $0.25 por hora en concepto de "Diferencial por Turno Nocturno" implementado por General Instruments constituye una forma de retribución pecuniaria dentro del contexto de la definición del término **"salario"** de la Ley 379. Nótese que, incluso, se trata de un pago o compensación **por hora trabajada** que el patrono estableció como incentivo a los empleados, en atención a lo gravoso que resulta trabajar en horarios nocturnos.

---

[54] 29 L.P.R.A. sec. 288.

[55] Como cuestión de hecho, la Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico, *infra*, define de manera similar el término salario. Lo define así: **"*Salario*** – Incluye sueldo, jornal, **y toda clase de compensación**, sea en dinero, especie, servicios, facilidades o combinación de cualesquiera de ellos; pero no incluirá sino dinero cuando se trate de salario mínimo prescrito bajo las disposiciones de este título, a menos que el Secretario disponga o autorice otra cosa" (énfasis suplido).

Así las cosas, no le asiste la razón a General Instruments cuando argumenta que el diferencial de turno en cuestión no puede ser incluido como parte del "tipo de salario convenido para las horas regulares" de la señora Hernández Santos. Como correctamente concluyera el Tribunal de Apelaciones, General Instruments venía obligada a incluir el concernido diferencial de turno como parte del tipo de salario regular por hora de la señora Hernández Santos a los fines de calcular la compensación a tipo doble que le correspondía por las horas extras rendidas después de las 3:30 PM.

La conclusión a la que hoy llegamos está en armonía con nuestros pronunciamientos en los casos de <u>Junta de Rel. Trabajo v. Orange Crush</u>[56], y <u>Beauchamp v. Holsum</u>[57], en los que interpretamos el concepto "sueldo" o "salario", contenido en las Leyes de Salario Mínimo[58] y de Indemnización por Despido Injustificado[59], en su sentido más amplio y liberal. Asimismo, nuestra conclusión es cónsona con lo resuelto en <u>Quiñones Rosa v. Fajardo Development Co.</u>[60] Allí determinamos que cuando el patrono acuerda con sus empleados el pago de distintos tipos por hora que aumentan en función del momento

---

[56] 86 D.P.R. 652, 654 (1962).

[57] 116 D.P.R. 522, 526-527 (1985).

[58] En aquel entonces, Ley Núm. 96 de 26 de junio de 1956, según enmendada, 29 L.P.R.A. ant. sec. 245 *et seq*.

[59] Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185a *et seq*.

específico del día en que se rinde la labor, todo ello con el objetivo de hacerles atractivo trabajar durante períodos normalmente dedicados al solaz y al descanso, venía obligado a calcular la compensación por horas extras trabajadas durante dichos periodos, a base del doble del tipo por hora acordado para cada momento del día en que se trabajaron las mismas.[61] No está de más puntualizar aquí que al examinar las disposiciones de la Ley 379 debemos tener en cuenta el reiterado principio de que se trata de un instrumento de justicia social y de carácter reparador, y como tal, debe ser interpretada en forma liberal, a favor de la mayor protección de los derechos de los empleados.[62]

---

[60] 90 D.P.R. 684 (1964).

[61] Íd., págs. 687-688.

[62] Sánchez *et al*. v. Sylvana Lighting, 2006 T.S.P.R. 27, 2006 J.T.S. 36, 167 D.P.R. __ (2006); Cintrón v. The Ritz Carlton Hotel, 2004 T.S.P.R. 82, 2004 J.T.S. 88, 162 D.P.R. __ (2004); Rosario Toledo v. Distribuidora Kikuet, 151 D.P.R. 634 (2000); Acevedo v. P.R. Sun Oil Co., 145 D.P.R. 752 (1998); Dorante v. Wrangler de P.R., 145 D.P.R. 408 (1998); Vélez Rodríguez v. Pueblo International, Inc., 135 D.P.R. 500 (1994); Muñoz Hernández v. Policía de P.R., 134 D.P.R. 486 (1993); Pacheco Pietri v. E.L.A., 133 D.P.R. 907 (1933). Esa norma de interpretación es de mayor rigor ante la declaración constitucional al efecto de que todo trabajador tiene derecho a un salario mínimo razonable, a protección contra riesgos para su salud o integridad personal en su trabajo o empleo, y a una jornada ordinaria que no exceda de ocho horas de trabajo; y que sólo podrá trabajarse en exceso de este límite diario mediante compensación extraordinaria que nunca será menor de una vez y media el tipo de salario ordinario dispuesto por ley. Art. II, Sec. 16, Const. E.L.A., L.P.R.A., Tomo 1. Nótese que existe una gran diferencia entre interpretar la ley y legislar judicialmente. Contrario al escenario envuelto en el señalamiento de error discutido en la parte II A de esta Opinión, el presente en esta parte II B es susceptible de interpretación judicial.

## C. La doctrina federal conocida como "*de minimis*"

General Instruments le solicitó al Tribunal de Apelaciones que revocara al Tribunal de Primera de Primera Instancia y le exonerara de pagar la penalidad correspondiente a los periodos o fracciones de periodos de tomar alimentos trabajados por la señora Hernández Santos. Arguyó que las violaciones al P.T.A. consistían de "pocos minutos" y que por ello no eran compensables bajo la doctrina federal conocida como "*de minimis*". Es menester recordar aquí que la señora Hernández Santos acordó con General Instruments reducir a media (½) hora su P.T.A. y que dicha reducción contó con el aval del Secretario del Trabajo.

El Tribunal de Apelaciones resolvió que la doctrina "de minimis" no era aplicable al presente caso porque fueron numerosas las ocasiones en que General Instruments violó el derecho de la señora Hernández Santos a disfrutar de su ya reducido P.T.A.[63] Como cuestión de hecho, y según indicáramos antes, el Tribunal de Primera Instancia incluyó en su sentencia una relación tabulada de ciento noventa (190) violaciones al P.T.A de la señora Hernández Santos entre los años 1991-1997.[64] Según se indica en la referida sentencia, las violaciones ocurrieron tanto durante primeros como durante segundos periodos de tomar alimentos. General Instruments arguye ante nosotros que el foro intermedio

---

[63] Apéndice del recurso de *certiorari*, pág. 3057.

[64] Íd., págs. 710-713.

apelativo erró porque el factor decisivo para la aplicación de la figura jurídica en cuestión es la cantidad de tiempo de trabajo envuelto y no la numerosidad de las violaciones.[65] Sin embargo, la sentencia del tribunal de Primera Instancia indica que en las ocasiones en que se violó el P.T.A. de la señora Hernández Santos, ésta trabajó por más de cinco (5), seis (6) y siete (7) horas consecutivas sin hacer una pausa en sus labores para alimentarse.

La doctrina federal conocida como *"de minimis"* se encuentra codificada, según interpretada por el Tribunal Supremo de los Estados Unidos, en la sección 785.47 del Título 29 del Código Federal de Reglamentos (C.F.R.). Dicha sección reglamentaria fue adoptada por el Departamento del Trabajo de los Estados Unidos al amparo de la Ley de Normas Razonables de Trabajo de 1938 (Fair Labor Standards Act of 1938, en adelante F.L.S.A.).[66] La referida sección lee así:

> **§ 785.47 Where records show insubstantial or insignificant periods of time.**
>
> In recording working time under the Act, **insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded** for payroll purposes, **may be disregarded.** The courts have held that such trifles are de minimis (Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946)). **This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration,** and where the

---

[65] Alegato de la parte peticionaria, págs. 29-30. La Asociación de Industriales tampoco se expresó sobre este señalamiento de error. Véase nuevamente la nota al calce 16.

[66] 52 Stat. 1060, 29 U. S. C. A. sec. 201 *et seq.*

failure to count such time is due to considerations justified by industrial realities. **An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time** or practically ascertainable period of time he is regularly required to spend on duties assigned to him. See Glenn L. Martin Nebraska Co. v. Culkin, 197 F. 2d 981, 987 (C.A. 8, 1952), cert. denied, 344 U.S. 866 (1952), rehearing denied, 344 U.S. 888 (1952), holding that working time amounting to $1 of additional compensation a week is "not a trivial matter to a workingman," and was not de minimis; Addison v. Huron Stevedoring Corp., 204 F. 2d 88, 95 (C.A. 2, 1953), cert. denied 346 U.S. 877, holding that "To disregard workweeks for which less than a dollar is due will produce capricious and unfair results." Hawkins v. E. I. du Pont de Nemours & Co., 12 W.H. Cases 448, 27 Labor Cases, para. 69,094 (E.D. Va., 1955), **holding that 10 minutes a day is not de minimis** (énfasis suplido).

Por otro lado, al aprobarse la Ley 379 en el año 1948, la Asamblea Legislativa reconoció el derecho de todo trabajador no excluido de sus disposiciones al disfrute del P.T.A.[67] Dispuso en su artículo 14[68] que el tiempo señalado para tomar los alimentos no podía ser menor de una hora, a menos que por razón de conveniencia para el empleado y por estipulación de éste y su patrono, con la aprobación del Secretario del Trabajo, se fijare un período menor.[69]

---

[67] El derecho al P.T.A. fue otorgado inicialmente a los trabajadores en virtud de la Ley Núm. 49, *supra*, conocida como Ley para Regular las Horas de Trabajo de las Personas Empleadas en los Establecimientos Comerciales, Industriales y en Otros Negocios Lucrativos, y para Otros Fines. Esta ley fue expresamente derogada por la Ley 379.

[68] Hoy renumerado como artículo 15.

[69] 1948 Leyes de Puerto Rico 1255, 1263-1264; 29 L.P.R.A. ant. sec. 283.

Así, el derecho al disfrute del P.T.A formó parte del importante grupo de medidas que adoptó la Ley 379 en "protección de la salud, la seguridad y la vida del trabajador".[70] Sin duda, el derecho al disfrute del P.T.A transformó la jornada de labor del obrero puertorriqueño en una más humana. El reconocimiento por imperio de ley de dicho beneficio representó para él una verdadera conquista obrera.[71]

Según expusiéramos antes, el Tribunal de Primera Instancia encontró ciento noventa (190) violaciones al P.T.A. de la señora Hernández Santos entre los años 1991-1997.

Para el periodo de violación comprendido entre el año 1991 y el 19 de julio de 1995, el estado de derecho en relación con el P.T.A. seguía siendo el antes descrito. Es decir, los periodos señalados para tomar alimentos que ocurrieran dentro o fuera de la jornada regular de trabajo del empleado no podían ser menores de una hora, a menos que por razón de conveniencia para el empleado y por estipulación de éste y su patrono, con la aprobación del Secretario del Trabajo, se fijare un periodo menor.

---

[70] Refiérase a la discusión previa de la Exposición de Motivos de la Ley 379.

[71] Ahora bien, no fue sino hasta la aprobación de la Ley Núm. 121 de 27 de junio de 1961, que se enmendó el referido artículo 14 de la Ley 379 para disponer que todo patrono que emplee o permita que un empleado trabaje durante la hora señalada para tomar alimentos vendrá obligado a pagarle por dicha hora o fracción de hora un tipo de salario igual al doble del tipo convenido para las horas regulares. Martínez v. Commonwealth Oil Ref. Co., Inc., 92 D.P.R. 693 (1965).

Por su parte, durante el periodo de violación comprendido entre el 20 de julio de 1995 y el año 1997, el referido artículo 14 de la Ley 379, enmendado y renumerado como artículo 15 por la Ley Núm. 83 de 20 de julio de 1995, establecía –y establece actualmente–, en lo aquí relevante, lo siguiente:

> Los períodos señalados para tomar los alimentos que ocurran dentro o fuera de la jornada regular del empleado pueden ser menores de una (1) hora. Si por razón de conveniencia mutua para el empleado y su patrono, y por estipulación escrita de ambos se fijare un período menor éste **no podrá nunca ser menor de treinta (30) minutos, excepto para "*croupiers*", enfermeras, enfermeros y guardianes de seguridad que podrá ser de hasta un mínimo de veinte (20) minutos** (énfasis nuestro).[72]

En relación con el momento en que el patrono debe conceder a sus empleados el disfrute del P.T.A., la Ley 379 estableció durante todo el periodo de violación (1991-1997) –y establece actualmente–, que será no antes de concluida la tercera **ni después de comenzada la sexta hora de trabajo consecutiva, de manera que nunca se requiera a los empleados trabajar durante más de cinco (5) horas consecutivas sin hacer una pausa en las labores para alimentarse.**[73]

De otro lado, **si el patrono no concede al empleado el P.T.A. de la forma antes descrita, la Ley 379 le ordena pagar**

---

[72] 29 L.P.R.A. sec. 283.

[73] Íd. Debemos aclarar, sin embargo, que la Ley Núm. 83, *supra*, introdujo una excepción a esta norma. Consiste en permitir al Secretario del Trabajo autorizar que el P.T.A. pueda disfrutarse entre la segunda y tercera hora consecutiva de trabajo. Refiérase nuevamente al renumerado artículo 15 de la Ley 379, *supra*.

**por el periodo o fracción del periodo de tomar alimentos trabajado, además del salario regular o extraordinario por hora que le corresponde por dicha labor, según sea el caso, una penalidad equivalente a una vez adicional el salario regular por hora del empleado.**[74]

En su alegato, General Instruments nos invita a obviar o hacer caso omiso a la reclamación de P.T.A. de la señora Hernández Santos, mediante la adopción y aplicación de la doctrina federal "de minimis".[75] La peticionaria plantea que, según esta doctrina ha sido aplicada por los tribunales federales, se considera "de minimis" periodos de trabajo de hasta veinte (20) minutos, los cuales, de aplicarse la figura, el patrono no tendría que compensar. No podemos acceder a lo solicitado. Veamos.

Como expresamos antes, la doctrina en cuestión se originó en los Estados Unidos bajo las disposiciones del F.L.S.A. El Departamento del Trabajo de los Estados Unidos la codificó bajo la parte 785 del Código Federal de Reglamentos, la cual versa a cerca de qué constituyen "Horas Trabajadas" (Hours Worked). No obstante, esa ley federal no concede derecho a disfrutar de un P.T.A. Este derecho y

---

[74] 29 L.P.R.A. sec. 283. Véase, además, <u>Acevedo v. P.R. Sun Oil Co.</u>, *supra*, <u>Colón v. Syntex P.R., Inc.</u>, *supra*, y el Reglamento para Regular el Disfrute del Periodo de Tomar Alimentos, Compensación y la Expedición de Permisos para su Reducción, *supra*, pág. 6.

[75] En <u>Sucn. Meléndez v. Central San Vicente</u>, 86 D.P.R. 398 (1962), en la nota al calce 7, hicimos mención de la figura
(Continúa . . .)

todas las normas legales que lo regulan son criatura exclusiva de nuestra Ley 379. Es decir, desde la perspectiva del F.L.S.A., no existe derecho a disfrutar del P.T.A. Sólo existe por virtud de nuestra Ley 379, la cual, en este extremo, se considera de mayor beneficio para el trabajador puertorriqueño. En vista de lo anterior, no venimos obligados por, y muy poco nos persuade, la referida doctrina federal a los fines de resolver una controversia jurídica relacionada con el derecho a disfrutar de un P.T.A. reducido a media (½) hora por acuerdo entre patrono y empleado.

De otra parte, aún en el supuesto de que la doctrina en cuestión aplicara a la controversia ante nos, el resultado de ese ejercicio no sería el intimado por General Instruments. Ello, porque de la citada sección 785.47 del C.F.R. se puede colegir que la doctrina aplica cuando están presentes, entre otras, las condiciones siguientes: (1) el tiempo de trabajo en disputa es **insignificante y no puede ser registrado con precisión** para propósitos de nómina y (2) tiene que tratarse de **tiempo de trabajo incierto e indefinido** de segundos o minutos de duración. Tendrían que darse estas condiciones para que el patrono pueda obviar y no compensar el tiempo de trabajo en cuestión.

---

jurídica "de minimis". Nuestras expresiones allí no fueron el fundamento de la decisión, por lo que constituyen *dictum*.

Sin embargo, las mencionadas condiciones no están presentes en el caso de la señora Hernández Santos. Un análisis de las tarjetas de asistencia de ésta revela con certeza y precisión que entre los años 1991 y 1997, ésta trabajó en innumerables ocasiones de forma consecutiva, sin pausar para tomar sus alimentos, por espacio de 5 horas y 15 minutos, 5 horas y 30 minutos, 5 horas y 45 minutos, 6 horas, 6 horas y 15 minutos, 6 horas y 30 minutos, 6 horas y 45 minutos y 7 horas.[76] Ocurriendo ello en jornada regular como fuera de ella.[77] Y sabemos que la Ley 379 requería que la media (½) hora de P.T.A. de la señora Hernández Santos fuese disfrutada en algún momento después de concluida la tercera hora de trabajo consecutiva y antes de comenzar la sexta, de manera que no se le requiriera o permitiera trabajar por más de cinco (5) horas consecutivas sin realizar una pausa en sus labores para alimentarse, lo mismo en jornada ordinaria que en extraordinaria.

Por otro lado, General Instruments aduce también ante nosotros que de haber ocurrido violaciones al P.T.A. de la señora Hernández Santos, pagó la penalidad correspondiente a las mismas. Sin embargo, ni siquiera nos puso en condición de resolver según lo intimado. No nos ilustró su contención

---

[76] A modo de ejemplo, véase Apéndice del recurso de *certiorari*, págs. 819, 821, 824, 837, 864, 868, 821, 887, 903, 906, 911, 923, 992, 995, 997, 949, 952, 1011, 1054, 1081, 1084, 1088, 1090, 1099, 1101, 1103, 1105, 1108, 1110, 1112, 1117, 1119, 1121.

[77] Íd.

a través de cómputos ni mediante referencia alguna a las tarjetas de asistencia y nóminas incluidas en el apéndice del recurso. Su mero planteamiento no puede afectar la presunción de corrección que acompaña a la determinación del foro primario a los efectos de que General Instruments tiene que pagar la penalidad correspondiente a las violaciones al P.T.A. de la señora Hernández Santos. De todas maneras, como correctamente concluyeron tanto el Tribunal de Primera Instancia como el foro *a quo*, es un hecho constatado por nuestro propio análisis integral de los voluminosos registros de asistencia y nóminas que General Instruments incluyó como parte del apéndice de su recurso, que ésta no pagó la penalidad que ordena la Ley 379 por los periodos o fracciones de periodos de tomar alimentos que trabajó la señora Hernández Santos.[78]

Finalmente, debemos destacar que, de este Tribunal aplicar la doctrina "de minimis", como la concibe General Instruments, estaría, en la práctica, y vía *fiat judicial*, menoscabando seriamente, o incluso, eliminando el importante derecho al disfrute del P.T.A. Nótese que el permiso concedido por el Secretario del Trabajo a la peticionaria en el año 1985 sólo le autorizó a reducir el P.T.A. de la señora

---

[78] Véase, a modo de ilustración, Apéndice del recurso de *certiorari*, págs. 819, 820, 821, 822, 824, 825, 837, 838, 864, 865, 868, 869, 874, 875, 887, 888, 903, 904, 906, 908, 911, 912, 923, 924, 992, 993, 995, 996, 997, 998, 1002, 1003, 1005, 1006, 1011, 1012, 1054, 1055, 1081, 1082, 1084, 1085, 1088, 1089, 1090, 1091, 1099, 1100, 1101, 1102, 1103, 1104,
(Continúa . . .)

Hernández Santos a media (½) hora.  Como antes indicamos, el 20 de julio de 1995, entró en vigor la Ley Núm. 83, *supra*, la cual enmendó la Ley 379 para disponer que el P.T.A podía reducirse **a no menos de treinta (30) minutos**, mediante estipulación escrita a esos efectos entre el empleado y el patrono, para beneficio de ambos, y sin que fuera requerida su aprobación por el Secretario del Trabajo.  La referida ley sólo permitió una excepción al forzado disfrute de, al menos, treinta (30) minutos de P.T.A.  La excepción consiste en permitir, únicamente en el caso de *croupiers*, enfermeras, enfermeros y guardianes de seguridad, una reducción al disfrute del P.T.A. **a no menos de veinte (20) minutos**.

Según la argumentación de General Instruments, la doctrina "de minimis" faculta al patrono a obviar, a pasar por alto y no compensar, tardanzas o violaciones en el disfrute del P.T.A. de hasta veinte (20) minutos.  Ello implicaría que, cuando un empleado acuerda con su patrono reducir su P.T.A. a  treinta (30) minutos, como lo hizo la señora Hernández Santos, la aplicación de la referida doctrina podría tener el efecto de reducírselo a tan sólo diez (10) minutos.  Peor aún, en el caso de un *croupier*, una enfermera, un enfermero y un guardia de seguridad, la aplicación de la mencionada doctrina podría tener la consecuencia de privarlo completamente de su derecho a

1105, 1106, 1108, 1109, 1110, 1111, 1112, 1113, 1117, 1118, 1119, 1120, 1121, 1122.

disfrutar del P.T.A. Como puede apreciarse, en ambos escenarios, el resultado de aplicar la doctrina sería absurdo. El propio legislador expuso al aprobar la citada Ley Núm. 83 que uno de sus cuatro (4) propósitos fundamentales fue, y citamos:

> ........
> 3) proteger y fortalecer los derechos adquiridos por los trabajadores bajo la legislación protectora del trabajo.[79]

En consecuencia, no erró el Tribunal de Apelaciones al confirmar al foro primario y resolver que General Instruments venía obligada a pagar la penalidad correspondiente a los periodos o fracciones de periodos de tomar alimentos trabajados por la señora Hernández Santos.

**D. Fraccionamiento de vacaciones**

Tal y como expresamos en la relación de hechos de la Opinión, el Tribunal de Apelaciones confirmó la determinación del Tribunal de Primera Instancia que ordenó a General Instruments pagarle al señor Jiménez Marrero, nuevamente, los días de vacaciones que le pagó y que éste disfrutó, de forma interrumpida o fraccionada, en dos (2) periodos de cinco (5) días laborables consecutivos cada uno, tanto en el año 1995 como en el 1996.[80]

General Instruments aduce que el foro *a quo* se equivocó por dos (2) razones principales. En primer lugar, porque no

---

[79] Ley Núm. 83, *supra*, Exposición de Motivos, 1995 Leyes de Puerto Rico 380, 385.

[80] Apéndice del recurso de *certiorari*, págs. 3050-3054.

hubo prueba de fraccionamiento de vacaciones. En segundo lugar, porque el doble pago de vacaciones ordenado constituye la imposición impermisible de una penalidad no contemplada por el ordenamiento jurídico laboral.

Su primer planteamiento es totalmente inmeritorio. La transcripción del juicio en su fondo demuestra, indubitada y elocuentemente, que el juez sentenciador, haciendo un examen en sala de las tarjetas de asistencia del señor Jiménez Marrero y de las nóminas de pago, encontró que éste disfrutó de vacaciones fraccionadas, en dos (2) semanas interrumpidas o no consecutivas del año 1995, a saber: en las semanas que terminaron 13 y 28 de agosto de ese año.[81] Lo mismo encontró al examinar en sala las tarjetas de asistencia y nóminas de pago correspondientes al año 1996. En ese año, las vacaciones se disfrutaron durante las semanas que terminaron 3 de junio y 9 de julio.[82] Lo que es peor, uno de los propios representantes legales de General Instruments admitió el fraccionamiento en cuestión al responder a la aseveración del juez a los efectos de que los registros examinados demostraban el fraccionamiento de las vacaciones tanto en el año 1995 como en el 1996. A ella, uno de los abogados de General Instruments respondió: "[e]so es correcto. Pero esos

---

[81] Íd., págs. 2850-2853.

[82] Íd., págs. 2846-2851. Bajo el Decreto Mandatario Núm. 81, el señor Jiménez Marrero tenía derecho a acumular diez (10) días de vacaciones anuales.

son los únicos dos años porque en el 97 se le liquidaron, se pagó".[83]

Adentrémonos entonces en el análisis del segundo planteamiento de General Instruments.

La extinta Junta de Salario Mínimo de Puerto Rico (la Junta) fijó por muchos años el derecho a la acumulación, disfrute y paga de la licencia de vacaciones que perciben los trabajadores del sector de empleo privado y de las corporaciones públicas que operan como empresa privada. Lo hacía al amparo de la hoy derogada Ley Núm. 96, *supra*, en adelante Ley 96. La Junta fijaba dicha licencia, mediante la aprobación de los conocidos decretos mandatorios. Al aprobar cada decreto mandatorio, la Junta determinaba a qué industria aplicaba. Para ello, establecía una definición de las actividades que estaban comprendidas dentro del alcance del respectivo decreto mandatorio. Una vez aprobados y en vigor, los decretos mandatorios constituyen documentos cuasi-legislativos con fuerza de ley.[84]

Aunque el señor Jiménez Marrero trabajó para General Instruments desde diciembre de 1994 hasta el mismo mes del año 1997, para fines de lo que hoy resolvemos es conveniente repasar lo dispuesto en el decreto mandatorio aplicable a General Instruments, a partir de su revisión de 1984, en

---

[83] Apéndice del recurso de *certiorari*, pág. 2853.

[84] J.R.T. v. Junta Adm. Muelles Mun. de Ponce, 122 D.P.R. 318, 329 (1988).

relación con el aspecto **del disfrute** de la licencia de vacaciones. Como cuestión de hecho, las partes están contestes en que General Instruments se regía por el Decreto Mandatorio Núm. 81, aplicable a la industria de metales, maquinaria, productos eléctricos, instrumentos y productos relacionados, en adelante el Decreto 81.

La tercera revisión del año 1984 del Decreto 81, disponía, con relación al disfrute de vacaciones, lo siguiente:

> Las vacaciones **las disfrutará consecutivamente el empleado** y se concederán **anualmente** en tal forma que no interrumpan el normal funcionamiento de la empresa, al cual fin el patrono establecerá los turnos correspondientes (énfasis suplido).[85]

Surge de la cita que el Decreto 81, revisión de 1984, era inflexible en cuanto al disfrute de las vacaciones se refiere. Había una sola forma de disfrutar los días de vacaciones acumulados: una vez al año, de manera consecutiva. No obstante, el 21 de septiembre de 1992, comenzó a regir la cuarta revisión del referido decreto mandatorio. Con ella, la Junta añadió al lenguaje relativo al disfrute de vacaciones la oración que enfatizamos en el párrafo siguiente:

> Las vacaciones las disfrutará consecutivamente el empleado y se concederán anualmente en tal forma que no interrumpan el normal funcionamiento de la empresa, al cual fin el patrono establecerá los turnos correspondientes. **Estas vacaciones**

---

[85] Decreto Mandatorio Núm. 81, Tercera Revisión (1984), aplicable a la industria de metales, maquinaria, productos eléctricos, instrumentos y productos relacionados.

> **anuales, previo el acuerdo mutuo entre el empleado y el patrono, podrán ser segmentadas en dos periodos** (énfasis nuestro).[86]

Se desprende claramente de lo anterior que, a partir del año 1992, se flexibilizó la norma del disfrute de los días de vacaciones acumulados para permitirlo en cualquiera de dos (2) formas, a saber: (1) una vez al año, consecutivamente o (2) fraccionados en dos periodos al año, de existir un previo acuerdo entre las partes a esos fines.

Toda vez que el señor Jiménez Marrero comenzó a trabajar en General Instruments en diciembre de 1994, su derecho a acumulación, disfrute y paga de vacaciones tuvo su origen en las disposiciones del Decreto 81, cuarta revisión de 1992. No obstante, en el año 1995, esta vez mediante acción legislativa, fue enmendado nuevamente el lenguaje relacionado al disfrute de vacaciones contenido en el referido decreto. La modificación a su lenguaje fue introducida por la Ley Núm. 84 de 20 de julio de 1995[87], en lo sucesivo Ley 84, la cual enmendó la Ley 96 y entró en vigor el 1 de agosto de 1995. La Ley 84 enmendó sustancialmente la Ley 96, y con ello, los decretos mandatorios vigentes a la fecha, y que habían sido aprobados a su amparo.

---

[86] Decreto Mandatorio Núm. 81, Cuarta Revisión (1992), aplicable a la industria de metales, maquinaria, productos eléctricos, instrumentos y productos relacionados.

[87] 1995 Leyes de Puerto Rico 389; 29 L.P.R.A. ant. sec. 245 *et seq.*

En vista de que el Tribunal de Primera Instancia, así como el Tribunal de Apelaciones, aplicaron a la presente controversia disposiciones derogadas del Decreto 81, y no las disposiciones de la entonces vigente Ley 84, nos vemos precisados a discutir el alcance que tuvo la referida pieza legislativa y su efecto sobre los decretos mandatorios. De paso, con ello aclaramos las dudas que los tribunales inferiores puedan todavía tener en torno a la más importante de las leyes aprobadas por la Asamblea Legislativa durante la denominada reforma laboral de 1995.

Precisamos que, si bien es cierto que la Ley 96, según enmendada por la referida Ley 84, fue derogada en el año 1998, su sucesora incorporó, en esencia, todas sus disposiciones relativas a acumulación, uso, disfrute y paga de la licencia de vacaciones. Nos referimos a la actual Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico, Ley Núm. 180 de 27 de julio de 1998, según enmendada, en adelante Ley 180.[88] Por ello, los pronunciamientos que procedemos a hacer son igualmente aplicables al estado de derecho actual.

En términos generales, y en lo aquí importante, la Ley 84 estableció la nueva política pública del Estado en lo que concierne a los beneficios marginales que hasta entonces

---

[88] 29 L.P.R.A. sec. 250 *et seq*. Esta ley no es aplicable a los hechos del caso de autos.

proveían a los trabajadores los decretos mandatorios.[89] Tuvo, entre sus propósitos, terminar con la multiplicidad de normas cuasi-legislativas disímiles contenidas en los decretos mandatorios.[90] Así, la Asamblea Legislativa expresó en su Exposición de Motivos la voluntad de erradicar la falta de uniformidad en los beneficios y otros aspectos de los decretos mandatorios.[91]

Por ende, la Ley 84 trajo consigo un cambio en la forma en que por años se aplicaron a los trabajadores los distintos decretos mandatorios de la Junta. En ese sentido, la Ley 84 estableció que para saber cuántos días de licencias de vacaciones y enfermedad acumula un empleado al mes, y cuántas horas se le requiere trabajar mensualmente para acumular dichas licencias, había que realizar un ejercicio comparativo entre lo que decía la ley sobre tales extremos y lo que sobre el particular proveía el decreto mandatorio aplicable al patrono.[92]

Así las cosas, la concernida ley dispuso un nivel general mínimo de acumulación de licencia de vacaciones de

---

[89] 1995 Leyes de Puerto Rico, Exposición de Motivos, 389.

[90] Informe Conjunto de las Comisiones de Gobierno y de Trabajo y Asuntos del Veterano de la Cámara de Representantes sobre el P. de la C. 1967 de 13 de julio de 1995, págs. 18-19.

[91] 1995 Leyes de Puerto Rico, Exposición de Motivos, 391. No nos corresponde pasar juicio sobre si la Legislatura logró con la ley, y en la práctica, sus expectativas.

[92] R. N. Delgado Zayas, Observaciones en torno a las licencias de vacaciones y enfermedad en la empresa privada, XVIII (Núm. 53) Rev. del Trabajo 55 (mayo 2002).

(Continúa . . .)

uno y un cuarto (1 1/4) de día por mes y un nivel general mínimo de acumulación de licencia por enfermedad de un (1) día mensual, por cada mes que el empleado trabajase no menos de 115 horas.[93]

En los casos de industrias regidas por decretos mandatorios contentivos de (1) niveles de acumulación de licencias de vacaciones y enfermedad y (2) niveles de horas de trabajo requeridas para acumularlas **equivalentes** a los provistos en la Ley 84, la ley, y no el decreto, cubriría a sus empleados a partir del 1 de agosto de 1995.[94]

La Ley 84 estableció, además, que los empleados que al 1 de agosto de 1995 estuviesen cubiertos por decretos mandatorios contentivos de (1) niveles de acumulación de licencias de vacaciones y enfermedad y (2) niveles de horas de trabajo requeridas para acumularlas **mayores** a los dispuestos en la ley, mantendrían los mismos. Ello implicó, *sub silentio*, que los empleados que comenzaran a trabajar a partir de esa fecha en industrias regidas por tales decretos mandatorios, sólo tendrían derecho a los beneficios mínimos consignados en la ley (1¼ días de vacaciones y 1 día de enfermedad por cada mes que trabajen 115 horas o más). Dicho de otra forma, en tales industrias se estableció una diferencia en lo que a niveles de acumulación de licencias y

---

[93] 1995 Leyes de Puerto Rico 395; 29 L.P.R.A. ant. sec. 245n(c).

niveles de horas requeridas para acumularlas se refiere, que dependía de la fecha de comienzo en el empleo del trabajador (si comenzó antes o después del 1 de agosto de 1995).[95]

Por otro lado, la Ley 84 dictó que aquellas industrias que al 1 de agosto de 1995 estuviesen regidas por decretos mandatorios contentivos de (1) niveles de acumulación de licencias de vacaciones y enfermedad y (2) niveles de horas de trabajo requeridas para acumularlas **menores** a los conferidos en la ley, continuarían siendo regidas por tales decretos.[96] En otras palabras, todos los trabajadores de dichas industrias, independientemente de la fecha en que comenzaron en sus empleos (haya sido antes o después del 1 de agosto de 1995), se mantendrían cubiertos por los respectivos decretos de menor beneficio. No obstante, la Ley 84 ordenó a la Junta revisar, en el menor tiempo posible, (1) los niveles de acumulación de licencias de vacaciones y enfermedad y (2) los niveles de horas de trabajo requeridas para acumularlas habidos en dichas industrias, a fin de alcanzar los niveles mínimos establecidos en la ley, en cuyo momento cesaría la jurisdicción de la Junta sobre los empleados de las mismas.[97]

---

[94] 1995 Leyes de Puerto Rico 395-396; 29 L.P.R.A. ant. sec. 245n(c).

[95] 1995 Leyes de Puerto Rico 396; 29 L.P.R.A. ant. sec. 245n(c).

[96] Íd.

[97] Íd.

Finalmente, la Ley 84 estableció que todos los demás aspectos relacionados a las licencias de vacaciones y enfermedad se regirían por lo dispuesto en ella y no por los decretos mandatorios, derogando expresamente toda disposición de un decreto mandatorio que estuviese en conflicto con la misma.[98] Es decir, a partir del 1 de agosto de 1995, todas las normas relativas a licencias de vacaciones y enfermedad que no fuesen estrictamente los niveles de acumulación y los niveles de horas requeridas para acumularlas se regían por la Ley 84 y no por los decretos mandatorios. De esta manera, y en lo aquí pertinente, las normas relacionadas **al disfrute** de la licencia de vacaciones contenidas en el Decreto 81 fueron sustituidas por las dispuestas en la Ley 84. Ello, tanto para empleados que comenzaron a trabajar en la industria cubierta por el mismo antes del 1 de agosto de 1995 como para los que comenzaron después de esa fecha.[99]

---

[98] Excepto aquella disposición que concediese un salario mínimo superior al federal. 1995 Leyes de Puerto Rico 401-402; 29 L.P.R.A. ant. sec. 247. Véase, además, R. N. Delgado Zayas, *op cit*, pág. 56. Véase, también, A. Acevedo Colom, Legislación protectora del trabajo comentada, 4ta ed, San Juan, 1996, pág. 60. Queda claro, sin embargo, que la Legislatura elevó a rango de ley y garantizó determinados beneficios a los empleados que al 1 de agosto de 1995 estaban cubiertos por decretos mandatorios contentivos de los mismos, a saber: días feriados con paga, garantías de compensación diaria mínima, compensación extraordinaria por trabajo durante horas extra diarias y liquidación periódica de licencia por enfermedad en exceso de los niveles dispuestos en los decretos aplicables. Véase 1995 Leyes de Puerto Rico 397-398 y 402; artículos 5 y 20 de la Ley 84, 29 L.P.R.A. ant. secs. 245n(q) y 247.

[99] R. N. Delgado Zayas, *op cit*, págs. 59-61.

Una de las normas del Decreto 81 que a partir del 1 de agosto de 1995 quedó sustituida por las normas pautadas por la Ley 84 fue, precisamente, aquella que antes citamos y que versa a cerca del disfrute consecutivo o fraccionado de las vacaciones.   Sobre el particular, la Ley 84 dispuso en su artículo 5, inciso i:

> **Las vacaciones se disfrutarán de manera consecutiva, sin embargo, mediante acuerdo entre el patrono y el empleado; éstas pueden ser fraccionadas, siempre y cuando el empleado disfrute de por lo menos cinco (5) días laborables consecutivos de vacaciones en el año** (énfasis nuestro).[100]

La primera parte de la cita dispone que los días de vacaciones acumulados tienen que disfrutarse consecutivamente.[101]   Se trata de una norma que previo al año 1995 estuvo contenida en la mayoría de los decretos mandatorios.   Ahora bien, bajo la Ley 84, vemos que la norma tiene una excepción, pues la parte de la cita que sucede al "sin embargo" dispone que los días de vacaciones acumulados pueden fraccionarse si se cumplen los requisitos siguientes: (1) existe acuerdo entre empleado y patrono a esos efectos y (2) si se garantiza al empleado un disfrute consecutivo de al menos cinco días laborables en el año.[102]

---

[100] 1995 Leyes de Puerto Rico 397; 29 L.P.R.A. ant. sec. 245n(i).

[101] R. N. Delgado Zayas, *op cit*, pág. 64.

[102] Íd.

Por otro lado, hemos indicado en el pasado que el derecho al disfrute de vacaciones ha sido instituido con el propósito de permitir a los empleados un período de descanso para reponer las fuerzas físicas y mentales agotadas en el período de trabajo y compartir ratos de tranquilidad y sosiego con sus familias.[103] En igual sentido, hemos expresado que con el disfrute de vacaciones se persigue concederle al trabajador un período de descanso que le ayude a reparar periódicamente las fuerzas que el diario trajín agota, así como brindarle la ocasión de compartir más intensamente con su familia un período de vacaciones anual, siendo éste la única oportunidad que tiene para poder gozar de la compañía de su familia durante todo el día durante un período razonable.[104]

El señor Jiménez Marrero sostiene que al fraccionarse sus vacaciones en dos (2) periodos de cinco (5) días laborables consecutivos cada uno, tanto en el año 1995 como en el 1996, sin que el patrono pudiese demostrar la existencia de un acuerdo a esos efectos, se violentaron sus derechos bajo nuestro ordenamiento jurídico laboral. Aquí es bueno asentar varios puntos cardinales. Primero, es incuestionable que General Instruments no probó ante el Tribunal de Primera Instancia que el señor Jiménez Marrero

---

[103] Ramos Villanueva v. Depto. de Comercio, 114 D.P.R. 665, 666 (1983); Rivera Maldonado v. Autoridad Sobre Hogares, 87 D.P.R. 453, 456 (1963).

[104] Muñoz Hernández v. Policía, 134 D.P.R. 486, 494 (1993).

acordó con ella el fraccionamiento de sus vacaciones. También lo es que el recurrido disfrutó de hecho -en descanso- en el año 1995 y en el 1996, la totalidad de los días de vacaciones anuales que tenía derecho a acumular.[105] Mucho más lo es que el patrono le pagó todos los días de vacaciones acumulados y disfrutados en descanso fraccionado en ambos años.

El problema es que el señor Jiménez Marrero no está conforme con ello y arguye que el hecho de que General Instruments no pudo demostrar la existencia de un acuerdo con él para fraccionar sus vacaciones, le hace merecedor en Derecho a que la empresa le pague de nuevo todos los días de vacaciones que le concedió en disfrute y paga durante los mencionados años 1995 y 1996 – veinte (20) días en total. Convenció de ello al Tribunal de Primera Instancia. Recordemos que dicho tribunal le dio la razón al señor Jiménez Marrero, tomando prestada y aplicando a General Instruments, por analogía, la siguiente penalidad dispuesta en la revisión de 1992 del Decreto 81:

> El patrono que no conceda a cualquiera de sus empleados las vacaciones a que tuviere derecho después de haberlas acumulado por dos (2) años, deberá concederle el total hasta entonces acumulado pagándole dos (2) veces el sueldo correspondiente por el periodo en exceso de dichos dos (2) años.

Razonó: si General Instruments le concedió al señor Jiménez Marrero vacaciones fraccionadas sin demostrar que hubo un acuerdo con el empleado a tales efectos, debe entonces

---

[105] 10 días anuales.

pagárselas dos (2) veces, teniendo un crédito por las que el empleado originalmente disfrutó y cobró, de forma fraccionada. También sabemos que el Tribunal de Apelaciones confirmó al foro primario, pues le pareció razonable su actuación.

Por su parte, General Instruments sostiene –de lo que se hace eco la Asociación de Industriales– que ambos foros incidieron porque nuestro sistema de derecho no provee penalidad ni remedio alguno ante un escenario de fraccionamiento de vacaciones como el habido en el caso y controversia ante nos. Es decir, plantea que aún cuando el fraccionamiento de vacaciones no se haya ajustado estrictamente a Derecho, no hay nada que proveerle al señor Jiménez Marrero.

Comencemos nuestra aplicación del Derecho a los hechos señalando que, toda vez que **el disfrute** de las vacaciones en cuestión ocurrió ya vigente la Ley 84[106], tal extremo estaba gobernado, no por el Decreto 81 sino por la mencionada ley. En todo caso, y suponiendo que procedía aplicar a General Instruments una penalidad por analogía, igualmente debió acudirse para ello a la Ley 84 y no al Decreto 81. Evidentemente, los foros inferiores erraron al aplicar el decreto y no la Ley 84. Y es que la referida ley también

---

[106] Según indicamos antes, las vacaciones del año 1995 se disfrutaron durante las semanas que terminaron 13 y 28 de agosto de ese año, mientras que la Ley 84 entró en vigor el 1 de agosto de 1995.

modificó la penalidad del Decreto 81 que por analogía aplicaron a General Instruments los mencionados foros. En cuanto a la concernida penalidad, la Ley 84, diferente al Decreto 81, dispuso en su artículo 5:

> ........
> (j) Mediante acuerdo entre el patrono y el empleado, podrá acumularse hasta un máximo de treinta (30) días de licencia por vacaciones. El patrono que no conceda las vacaciones después de haberse acumulado dicho máximo, deberá conceder el total hasta entonces acumulado, pagándole al empleado dos (2) veces el sueldo correspondiente por el período en exceso de dicho máximo.[107]

Como puede apreciarse de la cita, se instituyó una penalidad en la Ley 84 con un objetivo muy particular: desalentar que los patronos mantuvieran trabajando a sus empleados por demasiado tiempo sin disfrutar un periodo de descanso y de sosiego con sus familiares, que le ayude a reponer las fuerzas físicas y mentales presumiblemente agotadas por el período de trabajo consecutivo rendido. Específicamente, **la penalidad se ató al caso en que un patrono mantuviese al empleado sin disfrutar vacaciones después de haber acumulado el máximo dispuesto de treinta (30) días.** Por lo tanto, con el propósito de forzar al patrono a conceder al empleado, a más tardar ese momento, el

---

[107] 29 L.P.R.A. ant. sec. 245n(j). Al derogarse la Ley 84 y sustituirse por la Ley 180, el legislador volvió a modificar el lenguaje de la penalidad para que leyera: "Mediante acuerdo entre el patrono y el empleado, podrá acumularse hasta dos (2) años de licencia por vacaciones. El patrono que no conceda las vacaciones después de acumularse dicho máximo, deberá conceder el total hasta entonces acumulado, pagándole al empleado dos (2) veces el sueldo correspondiente por el período en exceso de dicho máximo". 29 L.P.R.A. sec. 250d(h).

disfrute de sus vacaciones, se elevó a rango de ley, el método disuasivo de la **doble penalidad <u>sólo por los días acumulados en exceso del mencionado máximo</u>**. Cabe destacar que el aludido artículo 5 de la Ley 84 estableció múltiples normas reguladoras de la licencia de vacaciones[108], **pero la**

---

[108] El artículo 5 de la Ley 84 estableció lo siguiente:

> Artículo 5.-Se enmienda la Sección 12 de la Ley Núm. 96 de 26 de junio de 1956, según enmendada, para que lea como sigue:

> Sección 12 [29 L.P.R.A. 245n].-Normas Sobre Salario Mínimo, Licencia por Vacaciones y Enfermedad y otros beneficios.

> (a) Los salarios mínimos de los empleados que no estén cubiertos por la Ley Federal de Normas Razonables del Trabajo de 1938, según enmendada se fijarán teniéndose en cuenta los propósitos y fines de esta ley. Deberán ser los salarios mínimos más altos que razonablemente pueda pagar la industria de que se trate sin reducir sustancialmente el empleo en dicha industria y tomando en consideración el costo de la vida y las necesidades de los empleados, así como las condiciones económicas y de competencia de la industria en cuestión.

> (b) Cuando se trate de industrias cubiertas por la Ley Federal de Normas Razonables de Trabajo de 1938, según enmendada, y que estén en competencia sustancial con industrias de los Estados de la Unión, se tomarán también en consideración los salarios y beneficios marginales prevalecientes en éstas y la situación de competencia existente entre industrias de Puerto Rico e industrias similares de los Estados Unidos.

> (c) Se dispone una acumulación mínima de licencia por vacaciones a razón de uno y un cuarto (1¼) días por mes; y una acumulación mínima de licencia por enfermedad a razón de un (1) día por mes. Será requisito para la acumulación de dichas licencias que el empleado trabaje no menos de ciento quince (115) horas en el mes. Disponiéndose que el uso de licencias por vacaciones y enfermedad se considerará tiempo

(Continúa . . .)

trabajado para fines de la acumulación de estos beneficios.

Los beneficios mínimos antes mencionados serán de aplicación inmediata a todos los empleados que a la fecha de vigencia de esta Ley estuvieran cubiertos por decretos mandatorios cuyos niveles de acumulación sean equivalentes a los anteriores. Los empleados que a la vigencia de esta Ley hayan estado cubiertos por decretos de la Junta que disponen mayores beneficios mínimos de licencias, permanecerán con la garantía de los mismos, según se dispone en el Artículo 45 de esta Ley.

Aquellos empleados cuyos decretos mandatorios dispongan, a la fecha de vigencia de esta Ley, beneficios menores a los establecidos en este inciso, continuarán bajo la protección de dichos decretos mandatorios. La Junta deberá gestionar en el menor tiempo posible y de acuerdo con la capacidad económica de cada industria los beneficios mínimos de licencias por vacaciones y enfermedad consignados en este inciso. Al alcanzar los beneficios mínimos antes mencionados, cesará la Jurisdicción de la Junta sobre dichos empleados.

(d) El tiempo de licencia por vacaciones y enfermedad se acumulará a base del día regular de trabajo en el mes en que ocurrió la acumulación. Para empleados cuyos horarios fluctúan, el día regular de trabajo se determinará dividiendo el total de horas regulares trabajadas en el mes entre el total de días trabajados. Para los empleados cuyos horarios de trabajo no se pueden determinar, se computará a base de días de ocho (8) horas regulares.

(e) El tiempo de licencia por vacaciones y enfermedad se usará y pagará a base del día regular de trabajo al momento de usarse o pagarse el beneficio. A estos fines, se podrá tomar en consideración un período no mayor de dos (2) meses antes de usarse o pagarse el beneficio.

(f) La licencia por vacaciones y enfermedad se pagará a base de una suma no menor al salario regular por hora devengado por el empleado en el mes en que se acumuló la licencia. Para empleados que reciben comisión u otros incentivos, que no

(Continúa . . .)

quedan a la entera discreción del patrono, se podrá dividir la comisión o incentivo total devengado en el año entre cincuenta y dos (52) semanas, para el cómputo del salario regular por hora.

(g) De establecerse un período probatorio autorizado por ley, la licencia por vacaciones se acumulará a partir de la terminación de dicho período probatorio. Sin embargo, todo empleado que apruebe el período probatorio, acumulará vacaciones desde la fecha de comienzo en el empleo.

(h) **El disfrute de las vacaciones no podrá ser exigido por el empleado hasta que las hubiere acumulado por un año. Las vacaciones se concederán anualmente, en forma que no interrumpan el funcionamiento normal de la empresa cuyo fin el patrono establecerá los turnos correspondientes.**

(i) **Las vacaciones se disfrutarán de manera consecutiva, sin embargo, mediante acuerdo entre el patrono y el empleado, estas pueden ser fraccionadas, siempre y cuando el empleado disfrute de por lo menos cinco (5) días laborables consecutivos de vacaciones en el año.**

(j) **Mediante acuerdo entre el patrono y el empleado, podrá acumularse hasta un máximo de treinta (30) días de licencia por vacaciones. El patrono que no conceda las vacaciones después de haberse acumulado dicho máximo, deberá conceder el total hasta entonces acumulado, pagándole al empleado dos (2) veces el sueldo correspondiente por el período en exceso de dicho máximo.**

(k) **A solicitud escrita del empleado, el patrono podrá permitir que las vacaciones incluyan días no laborables comprendidos dentro del período en que haya de disfrutar las vacaciones.**

(l) **En caso de que el empleado cese en su empleo, el patrono le hará efectivo el total hasta entonces acumulado, aunque sea menos de un año.**

(m) **A solicitud escrita del empleado, el patrono podrá permitir la liquidación parcial de la licencia por vacaciones acumulada y en exceso de diez (10) días.**

(Continúa . . .)

**única que se acompañó de una penalidad por su incumplimiento fue precisamente la norma antes discutida.   Ninguna otra norma de las allí pautadas por el legislador conlleva una penalidad por su inobservancia.**[109]   Inclusive, la norma que

---

(n) La licencia por enfermedad no usada por el empleado durante el curso del año quedará acumulada para los años sucesivos hasta un máximo de quince (15) días.

(o) Salvo en casos de fuerza mayor, el empleado deberá notificar a su patrono el hecho de su enfermedad tan pronto sea previsible que habrá de faltar al horario regular del comienzo de sus labores y no más tarde del mismo día de su ausencia.

(p) El disfrute de la licencia por enfermedad no excusa del cumplimiento con aquellas normas de conducta validamente establecidas por el patrono, como lo son las de asistencia, puntualidad, certificaciones médicas si la ausencia excede de (2) dos días laborables e informes periódicos sobre la continuación de la enfermedad.

(q) Todo patrono que requiera a sus empleados el uso de uniformes tendrá que sufragar los gastos que conlleve la adquisición de los mismos. Bajo ningún concepto se podrá requerir al empleado que, en forma alguna, contribuya directa o indirectamente a asumir total o parcialmente los gastos que conlleve la adquisición de tales uniformes.

Los empleados que a la fecha de vigencia de esta Ley hayan estado cubiertos por decretos mandatorios que dispongan para días feriados con paga, garantías de compensación diaria mínima y para el pago de compensación extraordinaria por trabajo durante horas extras diarias, continuarán disfrutando dichos beneficios, según se dispone en el Artículo 19 de esta Ley (énfasis suplido).

[109] Claro está, la Ley 96 conservó, en su sección 26 – así renumerada por la Ley 84 – **la doble penalidad general** aplicable a toda situación en que un trabajador recibía una compensación inferior a la prescrita en ella por concepto de salario mínimo, vacaciones o licencia por enfermedad. Véase
(Continúa . . .)

instituye la penalidad que aquí hemos examinado, aparece justamente después de aquella que dispone el disfrute consecutivo o fraccionado de las vacaciones. **Y no empece a ello, el legislador no acompañó a ésta última de una penalidad o remedio por su incumplimiento.**

El examen que hemos hecho del Decreto 81, desde su cuarta revisión de 1992, revela que nunca contempló una penalidad o remedio para el caso en que se efectuara un fraccionamiento de vacaciones sin acuerdo previo entre las partes. Por otro lado, el historial legislativo de la Ley 84 demuestra que la Asamblea Legislativa estudió en el año 1995 las normas relativas a la acumulación, disfrute y paga de vacaciones contenidas en los decretos mandatorios. A raíz del estudio, concluyó que con la Ley 84 se cumplía el cometido siguiente:

> ...simplifica[r], armoniza[r] y eleva[r] a rango de ley, por vez primera en la historia, los beneficios de licencia por vacaciones y enfermedad. Al presente, las disposiciones sobre las vacaciones y licencia por enfermedad son redactadas por distintos comités, compuestos por distintas personas nombradas por el Presidente de la Junta de Salario Mínimo. Un examen de todos los decretos revela, incuestionablemente, que tienen muchas disposiciones inconsistentes entre sí, ambiguas y a su vez ilógicas.

---

29 L.P.R.A. ant. sec. 246b. Sin embargo, dicha sección es inaplicable al caso de autos, pues el señor Jiménez Marrero no reclama haber recibido una compensación inferior a la prescrita en la ley por sus vacaciones. Por el contrario, y como señalamos antes, no está en controversia que General Instruments le pagó correctamente todos los días de vacaciones que disfrutó en descanso fraccionado.

**La mayoría de los decretos establecen que la licencia por vacaciones tiene que disfrutarse en su totalidad, de manera consecutiva. La experiencia demuestra que ello no es práctico, no es necesariamente beneficioso para el empleado, ni se cumple. Con frecuencia, un empleado necesita uno o dos días libres para asuntos personales, y se le permite cargar dicho tiempo a su licencia por vacaciones** (énfasis suplido).[110]

Así las cosas, la Asamblea Legislativa no dispuso en la referida pieza legislativa una penalidad o remedio para el caso en que se llevase a cabo un fraccionamiento de vacaciones que no se ajustase estrictamente a lo siguiente: (1) acuerdo entre las partes a esos fines y (2) que se garantice al empleado el disfrute de, al menos, cinco días laborables consecutivos al año. Sabemos que en el caso de autos las partes cumplieron con lo segundo. General Instruments, sin embargo, no pudo demostrar la existencia de lo primero, en relación con las vacaciones cobradas y disfrutadas, de forma fraccionada, por el señor Jiménez Marrero, en los años 1995 y 1996. ¿Tiene ello alguna consecuencia legal de naturaleza civil?

Somos de opinión que si al legislador le hubiese parecido conveniente para el ordenamiento jurídico laboral añadir una penalidad civil o remedio para atender una situación de fraccionamiento de vacaciones como la que presentó el caso de marras, fácil le hubiese sido pautarla en la Ley 84. No lo hizo. Como cuestión de realidad, tampoco

---

[110] Informe Conjunto de las Comisiones de Gobierno y de Trabajo y Asuntos del Veterano de la Cámara de Representantes sobre el P. de la C. 1967, *supra*, pág. 18.

lo hizo al derogar en 1998 la Ley 96, según enmendada por la Ley 84, y aprobar, en sustitución de ésta la Ley 180.

De otra parte, precisamente en casos de naturaleza laboral, hemos consistentemente resuelto que las "las penalidades no se presumen y que su imposición se justifica solamente cuando la ley expresamente lo dispone".[111] Inclusive, hemos determinado que en ausencia de una intención legislativa expresa no podemos por vía de interpretación extender una penalidad civil a casos que no se encuentran comprendidos específicamente en la ley.[112]

A la luz de lo anterior, erraron tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones al aplicarle por analogía a General Instruments una penalidad civil que el estado de derecho contempla para una situación jurídica totalmente distinta a la presente en el caso ante nos. Incidieron al ordenar a la peticionaria pagar de nuevo al señor Jiménez Marrero las vacaciones que, aunque en forma fraccionada, éste cobró y disfrutó real y efectivamente. Lo que hoy resolvemos está en armonía con la interpretación del asunto que ha hecho la Oficina del Procurador del Trabajo del Departamento del Trabajo y Recursos Humanos, agencia que a la

---

[111] J.R.T. v. Vigilantes, Inc., 125 D.P.R. 581, 596 (1990); J.R.T. v. Ventanas Yagüez, Inc., 103 D.P.R. 933, 935 (1975); Torres Marrero v. Hull Dobbs, 103 D.P.R. 662, 672 (1975); Rivera de Vicenty v. Colón, 103 D.P.R. 560, 563 (1975).

[112] Colón Molinary v. A.A.A., 103 D.P.R. 143, 157 (1974); Salgado v. Tribunal Superior, 92 D.P.R. 367, 371-373 (1965).

sazón administra e implementa nuestra legislación de salario mínimo, vacaciones y licencia por enfermedad.[113]

---

[113]  A continuación, transcribimos dos (2) consultas respondidas por la Oficina del Procurador del Trabajo de dicha agencia.  Aunque las respuestas del Procurador del Trabajo a las consultas formuladas datan de los años 1975 y 1984, para efectos de lo que hoy resolvemos, tienen gran importancia y valor persuasivo.  Ello, porque en aquel entonces (periodo previo a 1992) las vacaciones tenían que disfrutarse en su totalidad, de forma consecutiva.  Y es que, como vimos, el Decreto 81 no permitió el fraccionamiento sino después del año 1992.  Veamos:

6 de marzo de 1984

Re: Consulta Número 12350

Me refiero a la consulta de epígrafe, en la cual nos formula varias interrogantes relacionadas con el disfrute de vacaciones según reglamentado por el Decreto Mandatorio Núm. 81, aplicable a la Industria de Metales, Maquinaria, Equipo de Transportación, Productos Eléctricos, Instrumentos y Productos Relacionados.

A continuación se copian y contestan las correspondientes interrogantes:

"1. El decreto establece que las vacaciones las disfrutará consecutivamente el empleado.

a) ¿Podría acordarse el que las vacaciones se disfruten en pequeños intervalos de tiempo?

Si su respuesta es afirmativa:

1. ¿A petición del empleado?
2. ¿A petición del patrono?"

La contestación es en la negativa.

b) ¿Qué pasa si el empleado específicamente solicita sus vacaciones en pequeños intervalos de tiempo?"

Tal solicitud estaría en contra de la ley.

**c) ¿Que penalidad existe si el empleado no disfruta sus vacaciones consecutivamente?"**

(Continúa . . .)

**Injunction para que se prohíba, cese o desista de tal práctica, más la acción criminal correspondiente dispuesta por la Ley de Salario Mínimo de Puerto Rico (comisión de delito menos grave por violación del decreto).**
. . .

Cordialmente,
Néstor Barbosa Vargas
Procurador del Trabajo
(Énfasis nuestro)

17 de marzo de 1975

Re: Consulta #9740

Con mucho gusto contestamos su reciente comunicación mediante la cual nos consulta en relación al disfrute de vacaciones al amparo de los decretos mandatorios promulgados por la Junta de Salario Mínimo.

En la primera situación a que hace referencia, en que el obrero se ve en la necesidad de ausentarse de su trabajo por razones ajenas a su voluntad y que tampoco dependen de la empresa, entendemos que quedaría a opción del trabajador solicitar del patrono que se le imputen las ausencias a la licencia por vacaciones acumulada. De esa forma no se afectaría adversamente su salario y no violaría el patrono las disposiciones del decreto aplicable.

**La segunda hipótesis plantea una situación de fraccionamiento de las vacaciones de forma deliberada y sistemática lo que resulta en contra de las disposiciones reglamentarias aplicables. En esta última situación, a nuestro juicio, procedería, una acción de cese y desista a los fines de evitar que el patrono continúe con la práctica.**

Cordialmente,

Manuel Janer Mendía
Procurador del Trabajo
(Énfasis suplido)

Antes de terminar, queremos expresarnos a cerca de una particular solicitud que nos hace el señor Jiménez Marrero. Nos solicita que declaremos nulo, por contravenir la ley y la política pública, el disfrute y pago fraccionado de sus vacaciones de los años 1995 y 1996. De acceder a lo solicitado, este Tribunal estaría, no solo contradiciendo la norma de que las penalidades no se presumen, sino que estaría asumiendo facultades y prerrogativas constitucionales que pertenecen a la Asamblea Legislativa, pues implicaría legislar una **penalidad civil** que la Legislatura no ha considerado imponer, habiendo estado en posición de hacerlo tanto en el año 1995, con la aprobación de la Ley 84, como en el año 1998, cuando aprobó la Ley 180. **Imponerla constituye una consideración significativa de política pública cuya determinación le corresponde a la Asamblea Legislativa.**

Ahora bien, aclaramos que bajo ninguna circunstancia puede interpretarse lo aquí resuelto como una licencia a los patronos para fraccionar **unilateralmente** las vacaciones acumuladas por sus empleados. La vigente Ley 180, incorporó *ad verbatim* el lenguaje relacionado al disfrute de vacaciones contenido por su antecesora Ley 84. En ese sentido, la Ley 180 establece en su artículo 6, inciso f, que las vacaciones se disfrutarán de forma consecutiva, salvo que podrán fraccionarse, siempre y cuando: (1) haya acuerdo entre el empleado y el patrono a esos efectos y (2) se garantice al

empleado el disfrute de, al menos, cinco días laborables consecutivos al año.[114]

Por otro lado, el artículo 9 de la referida ley dispone que **el patrono que violare o se negare a cumplir o descuidare** el cumplimiento de cualquier disposición de ella, **incurrirá en delito menos grave y será castigado con pena de multa no menor de quinientos (500) dólares ni mayor de mil (1,000) dólares, o con pena de reclusión por un término no menor de noventa (90) días ni mayor de ciento veinte (120) días, o ambas penas a discreción del tribunal. En caso de reincidencia, la ley impone una multa que no será menor de mil (1,000) dólares ni mayor de cinco mil (5,000) dólares, o reclusión por un término no menor de ciento veinte (120) días ni mayor de un (1) año, o ambas penas, a discreción del tribunal.**[115] Por consiguiente, el o los empleados afectados por un fraccionamiento unilateral de vacaciones por parte del patrono, así como el Secretario del Trabajo, *motu proprio* o a instancia de éstos, podrán presentar las correspondientes denuncias criminales. Adviértase que el artículo 10 de la concernida pieza legislativa consagra la facultad del Secretario del Trabajo para instar **recursos de *injunctions* y cualesquiera otros que fuesen necesarios para hacer efectivos los términos de la ley.**[116]

---

[114] 29 L.P.R.A. sec. 250d(f).

[115] 29 L.P.R.A. sec. 250g.

[116] 29 L.P.R.A. sec. 250h.

                                    III

Por los fundamentos antes expuestos, revocamos la determinación recurrida que condena a General Instruments a pagar a la señora Hernández Santos a tiempo triple las horas trabajadas durante séptimos días que coinciden con horas extras semanales y aquella que ordena pagar nuevamente al señor Jiménez Marrero los días de licencia de vacaciones disfrutados durante los años 1995 y 1996.  Se confirma la sentencia del Tribunal de Apelaciones en todos sus demás extremos.[117]


                              Efraín E. Rivera Pérez
                              Juez Asociado

---

[117] En su quinto señalamiento de error, General Instruments plantea que la señora Hernández Santos no probó sus reclamaciones de P.T.A. y diferencia en pago de horas extras –por no haberse considerado en su cómputo el diferencial de turno nocturno.  El planteamiento fue debidamente atendido durante la discusión desarrollada en la Opinión con relación a ambas reclamaciones.  Resulta innecesario y repetitivo expresarnos por separado sobre la cuestión.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Ramón Jiménez Marrero y Nitza
Hernández Santos

    Demandantes Recurridos

          v.

General Instruments, Inc. y/o
NextLevel, Corp.

    Demandados Peticionarios

CC-2004-1031


SENTENCIA


San Juan, Puerto Rico, a 19 de enero de 2007.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, revocamos la parte de la sentencia recurrida que condena a General Instruments a pagar a la señora Hernández Santos a tiempo triple las horas trabajadas durante séptimos días que coinciden con horas extras semanales y aquella que ordena pagar nuevamente al señor Jiménez Marrero los días de licencia de vacaciones disfrutados durante los años 1995 y 1996. Se confirma la sentencia del Tribunal de Apelaciones en todos sus demás extremos.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri está conforme con lo resuelto en los acápites B y C de la parte II de la Opinión y disiente de lo resuelto en los acápites A y D. La Jueza Asociada señora Fiol Matta está conforme con lo resuelto en los acápites A, B y C de la parte II de la Opinión y disiente de lo expresado y resuelto en el acápite D.


           Aida Ileana Oquendo Graulau
          Secretaria del Tribunal Supremo